# CHARLESTON.

STATE ex rel. LEWIS et al. v. BOARD OF BALLOT COMMISSIONERS
OF WOOD COUNTY.

Submitted September 28, 1918.    Decided October 1, 1918.

1. ELECTIONS—*Primary Election—Constitutional Law.*
    The Primary Election Statute is constitutional and its regulations providing the manner of nominating candidates for office are reasonable, prescribing the exclusive method for making such nominations, except in case of certain offices therein expressly excepted. (p. 646).

2. SAME—*Primary Election—Failure to Comply with Election Statute.*
    One who does not certify his candidacy to the clerk of the circuit court of the county, pay to the sheriff his assessment and have his name printed on the primary election ballot of the political party whose nomination for a county office he seeks, as required by the Primary Election Statute, does not become the nominee of such party by the voters thereof voting for him by simply writing or pasting his name on the printed ballot in a blank space that may have been left for that purpose, even though he may have been voted for without opposition, or may have received a larger `number of votes than his opponents for the nomination. (p. 647).

Application by the State, on the relation of B. L. Lewis and T. Hardin Creel, for a writ of mandamus against the Board of Ballot Commissioners of Wood county.

*Writ denied.*

*McCluer & McCluer,* for relators.
*Wm. G. Conley,* for respondents.

WILLIAMS, JUDGE:

B. L. Lewis and T. Hardin Creel claiming to have been nominated in the primary election, held on the 6th of August, 1918, as candidates of the democratic party for the respective offices of House of Delegates, and Commissioner of the County Court for Wood county, have tendered their petition, duly verified, praying for a peremptory writ of mandamus to compel C. B. Wells, E. 1. Allen and Lewis Powell, composing the Board of Ballot Commissioners of said county, to place their names on the official ballot to be voted at the

general election to be held on the 5th of November, next. Notice of this application was accepted by respondents.

It appears from the petition and exhibits therewith filed that Wood county is entitled to elect three members to the House of Delegates and the democratic voters of said county had the right to nominate three candidates for such offices, but that the names of only two candidates appeared on the official primary ballot of that party, viz.: James P. Duval and P. F. Wells, who received 1170 and 1162 votes, respectively; that the name of petitioner B. L. Lewis was written or pasted on the ballot by the voters, in a blank space left for that purpose, and that he received 187 votes; that the three persons named received the highest number of votes cast by the democratic voters for candidates for said offices; that only one candidate for county commissioner was to be elected, and no name was printed on the democratic primary ballot as such candidate, but that a number of persons were voted for by the voters writing or pasting their names upon the ballots, and that L. C. Hettick received 146 votes, F. S. Hood, 43 votes, Monroe Uhl, 65 votes, and petitioner T. Hardin Creel, 169 votes; that, after the said primary election was held, and on the date fixed by statute, the county court met as a canvassing board, canvassed the ballots and certified the number of votes each person had received to the clerk of the circuit court of Wood county and at the same time certified the manner in which the names of petitioners were placed on the ballots. Copies of said certificates are filed with the petition. Petitioners aver they have filed the affidavits required by Sec. 26, Ch. 26, Acts 1915, and that respondents now decline and refuse to place their names on the official ballot to be voted at the general election. Respondents appeared by counsel and demurred to the petition.

To entitle them to the writ, relators must show a clear, legal right. Have they done so?

We have held that it is within the power of the legislature to regulate nominations by political parties of candidates for office, and that Ch. 26, Acts 1915, known as the primary election act, is constitutional. *Baer* v. *Gore,* 79 W. Va. 50; and *Cunningham* v. *Cokely,* 79 W. Va. 60. The act does not

apply to candidates for all the offices to be filled by the voters of the State, as for instance, judges of the various courts, presidential electors, candidates for office in cities and towns of less than ten thousand population, and candidates to fill vacancies at special elections. Sec. 1 of said Act. But as to those offices included within its terms and provisions, the manner of making nominations therein prescribed is exclusive. The Act embraces the offices to which, and applies to the political party by the voters of which petitioners claim to have been nominated, because it is shown by the vote polled at the next preceding general election to have the required per centum of the entire vote to constitute a political party within the meaning of Sec. 1 of the Act.

The offices in question are such as are to be filled by the voters of a single county, and Sec. 8 of the Act prescribes the form of certificate which petitioners were required to make and acknowledge before an officer authorized to administer oaths, and file with the clerk of the circuit court, in order that their names might be printed on the primary ballot of the political party whose nomination they were seeking. This they failed to do. Sec. 10 requires each political party to have separate ballots, and provides that, "the name of no candidate shall be placed on the primary ballot of his party, unless he has paid all assessments required by this act." Sec. 21 provides for an assessment upon the several candidates for the various offices. Candidates for all offices to be filled by the voters of the county, or a subdivision thereof, are required to pay their assessment to the sheriff, take his receipt therefor in duplicate and file one with the chairman of the board of ballot commissioners. The assessment which petitioners were required to pay was $10.00 each. Assessments upon candidates for nominations to offices embracing more than a single county as the unit are required to be paid to the Secretary of State, and by him apportioned among the various counties and turned over to the respective sheriffs thereof. The fund thus derived goes into the county treasury and is intended to aid in defraying the expenses of conducting the primary election, which are to be paid by the county courts, the same as other election expenses. Petition-

ers, nor either of them, ever filed either a certificate announcing his candidacy or a receipt from the sheriff showing payment of his assessment, in the manner required by the statute. These provisions are indispensable to entitle a person to have his name placed on the primary ballot of a political party, or to be voted for in any manner in a primary election as the candidate of a political party, defined as such by Sec. 1 of the Act. The statute in this respect is mandatory. It deals with the entire subject of political nominations, and the manner prescribed is exclusive, and the regulations reasonable and imperative. One of the primary purposes of the legislature in enacting the statute was to place the right and power of making party nominations in the hands of the voters of the respective political parties as near as possible, and there could be no better illustration of how that purpose could be utterly subverted and the statute rendered nugatory, if the writ should be granted in this case. In that event petitioners would become nominees of their political party by a small per centum of its voters, although one of them seems to have had no opposition. Two of the democratic candidates for the legislature appear to have received nearly twelve hundred votes, whereas petitioner B. L. Lewis claims to be nominated with only one hundred and eighty-seven (187) votes. The Act requires that a candidate shall certify his candidacy, pay his assessment and have his name printed on the general primary election ballot of the political party whose nomination he seeks before he can become its nominee by being voted for in a primary election. The question here presented was virtually decided by this court in the case of *Badger* v. *Prather and others,* Ballot Commissioners of Wirt County, which arose in 1916. The name of no candidate for the office of prosecuting attorney was printed on the republican primary ballot, and the voters of the republican party attempted to nominate William S. Blizzard as a candidate for that office by writing his name on the ballot. He thus received about 100 votes, which was a greater number than had been cast for any other person as a candidate for that office. Blizzard thereafter declined to permit his name to be printed on the official ballot as the nominee, and so noti-

fied the republican county executive committee, which then convened at the call of its chairman and named William E. White as the republican candidate, as if a vacancy in the nomination existed, and made application to the board of ballot commissioners of Wirt county to place the name of said William E. White on the official ballot to be voted at the general election as the republican nominee. Said board refused to print his name on the official ballot, and on petition to this court for a mandamus to compel it to do so, we refused the writ. Although no written opinion was prepared in that case, the reason for refusing the writ was, that we were of the opinion that Blizzard had not been nominated, hence his declining to allow his name to be printed on the general election ballot created no vacancy, and the county executive committee could not make original nominations.

It is an indispensable prerequisite to the nomination of a person as the candidate for a county office of a political party that he shall pay his assessment, and cause his name to be printed on the primary election ballot of the political party whose nomination he desires. The assessment is intended to help defray the expenses of conducting the primary election, and the printing of all candidates names on the primary ballot is designed to give publicity to their candidacy for the information of the voters, that they may thereby be enabled to select from among them the particular candidate they prefer to vote for. These obvious purposes of the statute would be thwarted if a person could be nominated in the manner here contended for. The primary election statute makes no provision for writing in the name of a candidate on a party ballot, as may be done on the official ballot in a general election. Sec. 12 provides for the printing of all candidates' names and prescribes the form of ballot and the manner in which the voter shall indicate his choice of candidates. He must do so by marking an X in the square opposite the name of the candidate he desires to vote for. Nowhere in the statute do we find any provision for writing in the names of candidates by the voter. Sec. 13 provides that an illiterate voter may receive assistance as provided in Sec. 60 of Ch. 3 of the Code, but that provision does not relate

to the manner of preparing the ballot or authorize the writing of names of candidates on the ballot.

For these reasons the writ is refused.

*Writ denied.*