STATE OF WEST VIRGINIA *ex rel.* LAWHEAD

*v.*

COUNTY COURT OF KANAWHA COUNTY *et al.*

(No. 9868)

Submitted July 16, 1946.   Decided July 23, 1946.

168

*Philip H. Hill,* for petitioner.

*Dale G. Casto,* for respondents.

LOVINS, JUDGE:

Jean Powell Lawhead filed her petition in mandamus in this Court against the County Court of Kanawha County, West Virginia, a corporation, Carl Calvert, its president, James G. Carper and Mont Cavender, commissioners of said Court, Paul E. Wehrle, clerk of said court, and Raymond Young, deputy clerk thereof, seeking to compel respondents to register her as a voter in precinct No. 118, City of Charleston, Charleston District, Kanawha County, West Virginia.

The controlling facts are not in dispute. The municipal authorities of the City of Charleston, on July 3, 1946, called a special election to be held July 26, 1946, for the purpose of authorizing a special tax levy. Relator is a resident of precinct No. 118 above mentioned, having all other qualifications of a voter therein, but is not registered as such. On July 6, 1946, she appeared in person in the office of the Clerk of the County Court of Kanawha County, West Virginia, demanded that she be registered as a voter in said precinct, which demand was refused. The refusal to register relator was based on the ground that relator's demand was made within thirty days next preceding the special election above mentioned, and that under the provisions of Section 26 of the Permanent Registration Law, as amended by Chapter 50, Article 2, Acts of the Legislature, Regular Session, 1943, relator was not then entitled to be registered. Upon such refusal relator made no further effort to register with the county court or its clerk, but made this application for a rule in mandamus, which was granted by three Judges of this Court in vacation.

Statutes relating to permanent registration of voters will be found in Chapter 43, Article 2, Acts of the Legislature, Regular Session, 1941, Chapter 50, Article 2, Acts of the Legislature, 1943, and Chapter 62, Article 2, Acts of the Legislature, Regular Session, 1945. A statute of temporary application with reference to registration of persons in the armed services of the United States, not here pertinent, will be found in Chapter 1, Acts of the Legislature, Extraordinary Session, 1944. The Permanent Registration Law, as embodied in said Chapters 43, 50, and 62, will be hereinafteer referred to as the Permanent Registration Law, noting the appropriate sections as designated in those chapters.

Respondents attempt to justify a refusal of the peremptory writ on two grounds: (a) That mandamus does not lie, relator having an adequate remedy by obtaining "a hearing before the county court", under the provisions of Section 37, Permanent Registration Law; and (b) that registration of relator is inhibited by the provisions of Section 26, Permanent Registration Law, as amended, she having made demand for registration within thirty days of the time of holding the special election called by the municipal authorities of the City of Charleston.

Generally mandamus is not an appropriate remedy where another sufficient and specific remedy exists. *Miller* v. *Board,* 126 W. Va. 248, 27 S. E. 2d 599; *Payne* v. *Staunton,* 55 W. Va. 202, 46 S. E. 927. "Conversely, if such remedy is inadequate or is not as equally beneficial, convenient, and effective, mandamus is available." *Miller* v. *Board, supra.* See *Hardin* v. *Foglesong,* 117 W. Va. 544, 186 S. E. 308. Under the statute invoked by respondents, a hearing by the county court for the purpose of reviewing a case pertaining to registration cannot be held within twenty days immediately preceding an election in which the person desiring to register seeks to vote. Section 38, Permanent Registration Law, as amended. Section 37, Permanent Registration law, giving the right to a hearing before the county court for the purpose of determining the right to register as a voter,

170

provides for reviews by a circuit court and this Court. Reading Sections 37 and 38, as amended, together, it may be that the remedy therein provided is adequate. However, we express no opinion as to the effect of said sections, and the adequacy of the remedy therein provided.

The duties of respondents respecting registration are imposed by the Permanent Registration Law, which is an integral part of Chapter 3, Code. That the performance of duties imposed by Chapter 3, Code, may be enforced by mandamus is clearly set forth in the following language: "Any officer or person, upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of mandamus. * * * A mandamus shall lie from the supreme court of appeals, or any one of the judges thereof in vacation, returnable before said court, to compel any officer herein to do and perform legally any duty herein required of him. * * *". Code, 3-5-41. The scope of mandamus as it existed at common law is extended by the provisions of the statute above quoted. The issuance of a writ of mandamus by this Court in matters pertaining to registration of voters, if the right to register is clear, is authorized by statute.

The right of suffrage is not an absolute, inherent and natural right. *Brannon* v. *Perkey*, 127 W. Va. 103, 107, 31 S. E. 2d 898, 901; *State* v. *Edwards*, 95 W. Va. 599, 122 S. E. 272. But such right is so important and necessary for the maintenance and operation of our form of Government that the qualifications of voters are set forth with particularity in Section 1, Article IV of the Constitution of this State, as said section is supplemented by the Nineteenth Amendment to the Constitution of the United States. The Legislature has no power to diminish or increase the qualifications established by the Constitution. *Brannon* v. *Perkey, supra; State* v. *Edwards, supra*. Although registration for voting is indispensable to the exercise of the right of suffrage, and rests primarily on the constitutional qualifications of the registrant, the Legislature has the power and the duty to enact appropriate laws for the "registration of all qualified voters in this state." Article IV, Section 12, Constitution

of West Virginia. Pursuant to the constitutional mandate, various statutes have been enacted establishing a system for the registration of voters, which was radically changed by the enactment of the Permanent Registration Law in the year 1941.

The general purpose of the constitutional provisions and statutes relative to voting and registration of voters is to permit all persons to vote who have the constitutional qualifications, and to prevent fraud in establishing the status of legal voters by means of registration. A person who is not registered is not entitled to vote, although qualified. Section 3, Permanent Registration Law. However, a voter, when challenged, may deposit a ballot for consideration by the board of canvassers, although the voter casting the ballot has not been registered. *State* v. *King,* 126 W. Va. 785, 793, 30 S. E. 2d 234.

It is to be noted that we are only concerned with the right of relator to register as a voter, and that her qualifications as a voter are not questioned. Respondents contend that her right to register is barred by the following provision of the Permanent Registration Law:

"The clerk of the county court may register any qualified person by filling in the prescribed registration form or forms, as the case may be, and having them signed by the applicant under oath or affirmation, except as is otherwise provided in this article. Upon proper proof, the registration record of any voter may be altered, amended, corrected, or cancelled by the clerk of the county court.

"The aforesaid registration or alteration, correction, or cancellation of registration records shall be carried on throughout the year, except during the thirty days preceding any election. For the initial registration the county court may, at its discretion, order the clerk of the county court to maintain additional office hours in the evening."

Section 26, Permanent Registration Law, as amended.

172

In the case at bar the right of realtor rests solely on the interpretation to be given Section 26 of the Permanent Registration Law, as amended. The Permanent Registration Law should not be construed so as to conflict with the general principles of law governing the exercise of the right of suffrage. *Old Dominion Building Assn.* v. *Sohn,* 554 W. Va. 101, 112, 46 S. E. 222. The spirit of a statue as opposed to the letter thereof controls. *McVey* v. *Chesapeake, etc. Telephone Co.,* 103 W. Va. 519, 523, 138 S. E. 97. The legislative intent is the true guide, and in arriving at that intent it may be necessary to exclude from the operation of the statute things within the letter but not the spirit thereof. *State* v. *Myers,* 74 W. V. 488, 82 S. E. 270.

It is argued that the words of Section 26 are plain and call for no construction. We agree that the words of that particular section are reasonably plain, but a strict construction of that section, standing alone, as contended for by respondents, would, in our opinion, result in thwarting the true intent of the Legislature. In many instances it would deprive persons of the right to vote without any lack of diligence on their part in demanding registration as voters. The following language used in Section 38, Permanent Registration Law, as amended, is an *indicium* of the legislative intent at variance with the literal words of Section 26, relied on by respondents: "* * * but no such hearing shall be held within the twenty days immediately preceding *the election in which the person whose resigstration is affected seeks to vote. * * *" (Italics supplied). We are loathe to attribute to the Legislature an intent to enact a statute preventing registration of qualified voters for all elections in a political subdivision because an election, special or otherwise, happens to be pending therein, and is to be held within thirty days of demand for registration. It is plain that in order to vote at an election a person must be registered thirty days or more prior to that election. This is a salutary rule and was enacted for the purpose of eliminating the evil of receiving and counting illegal ballots

occasioned by illegally registering persons not qualified to vote.

If a voter desires to cast a ballot at any election and is not registered, it is his duty to register at least thirty days before the election. In this case the realator, having demanded the right to register on the 6th day of July, 1946, would not be entitled to vote at the special levy election held in the City of Charleston on July 26, but we see no valid reason why she should not be permitted to vote at elections held more than thirty days after such demand is made.

It is entirely possible that numerous voters could be disfranchised, or their right to register restricted, by the calling of special elections of which they may have no knowledge, and upon presenting themselves for registration the pendency of such election could be utilized as a bar to their right of registration. For example, a special election called for the 10th of October in any election year would prevent registration for practically sixty days prior to the general election in November. Certainly, the Legislature never intended such result.

A literal construction of Section 26 of the Permanent Registration Law, as amended, would require that any voter living in the city of Charleston, and desiring to vote in the primary election to be held in this State on August 6, 1946, make demand for registration on or before the 26th day of June, 1946. Clearly this imposes a duty on a voter not authorized or contemplated.

Upon consideration of the constitutional provisions and statutes enacted pursuant thereto on the subjects of voting and elections, we think that under Section 26 of the Permanent Registration Law, as amended, that the pendency of an election to be held within thirty days from the date demand is made by a qualfied voter to register does not preclude his right to register, but he is only entitled to vote at elections to be held thirty days or more from the date of his demand. Giving to the statute this interpretation, we make effective what we

believe was the true intent of the Legislature, and avoid the unhappy consequences which would follow if the contentions of respondents were upheld.

For the reasons stated we award the peremptory writ of mandamus, commanding and requiring respondents to register the relator as a legal voter in precinct No. 118, City of Charleston, Charleston District, Kanawha County, West Virginia, and that said relator be certified as a voter in any election to be held in her precinct thirty days or more after July 6, 1946.

*Writ awarded.*