**George K. DRAKE and Charlene C. Drake, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.**

No. 75–3473.

United States Court of Appeals, Fifth Circuit.

June 24, 1977.

---

James G. R. Smith, Galveston, Tex., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Acting Chief, Appellate Section, Elmer J. Kelsey, John G. Manning, Attys., Tax Div., Dept. of Justice, Meade Whitaker, Chief Counsel, Internal Revenue Service, Myron C. Baum, Acting Asst. Atty. Gen., John G. Manning, Gary R. Allen, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before GODBOLD, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This is a tax case in which the facts are undisputed and the question presented is quite straightforward. The sole issue is whether taxpayers' petition for redetermination filed in the tax court was timely under section 7502 of the Internal Revenue Code of 1954 (I.R.C.). The tax court concluded that the filing was untimely and dismissed the petition. We affirm.

On February 5, 1975, notices of deficiency were mailed to taxpayers, George K. and Charlene C. Drake, for their tax years 1966–1969.[1] At 6:00 p. m. on the ninetieth day following the mailing of the notices—May 6, 1975—taxpayers' attorney personally mailed a petition for redetermination of tax liability to the tax court in a properly addressed, stamped airmail certified envelope at the main post office in Galveston, Texas. The envelope containing the petition for redetermination was not postmarked in Galveston, but was "regionally" postmarked in Houston on the following afternoon. The postmark appears as follows: "P.M. May 7, 1975, 770." This regional postmark represents the ninety-first day following the mailing of the notices of deficiency. We are called upon to determine whether the petition was filed within the time permitted by statute.

Section 6213(a) of the I.R.C. provides in relevant portion that "[w]ithin 90 days . . . after the notice of deficiency . . . is mailed . . ., the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency." The notices of deficiency in this case were unquestionably mailed on February 5, 1975. Section 7502(a)(1) of the I.R.C. states in relevant part:

If any return, claim, statement, or other document required to be filed . . . within a prescribed period . . . is . . . delivered by United States mail to the agency, officer, or office with

1. Separate statutory notices were issued to each taxpayer. The notice to George K. Drake determined a deficiency in income tax of $27,418.66 and additions to tax of $9,073.67 for the years 1966–1969. The notice to Charlene C.

Drake determined a deficiency in income tax of $9,478.51 and additions to tax of $3,142.70 for the years 1968 and 1969. Taxpayers dispute $41,475.62 of the total deficiency of $49,113.54.

which such return, claim, statement, or other document is required to be filed . . ., the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be. Indisputedly, the petition for redetermination was delivered to the tax court after the prescribed period and the envelope containing the petition was postmarked beyond the statutory time, to wit; the ninety-first day. Upon application of the plain words of the statute, it appears that taxpayers' petition for redetermination was not timely.

Taxpayers argue that a change in post office procedure whereby mail is "regionally" cancelled rather than cancelled at the local post office should excuse them for their untimely filing. Thus, in 1954 when Congress enacted the so-called "timely mailing-timely filing" provision, each local post office cancelled mail within several hours of deposit. Under this scheme the envelope containing the petition for redetermination would have been timely cancelled in Galveston. However, under the recently adopted "area processing system"[2] the envelope was transported by truck to Houston and cancelled some twenty-one hours after deposit in Galveston. Under these circumstances taxpayers assert that they should be excused and their petition considered timely.

On its face taxpayers' argument has some equitable appeal. The government concedes that the petition for redetermination was *in fact* timely deposited in the mail in Galveston on the ninetieth day. There is no contention made that taxpayers or their attorney knew of the new "area processing system" which evidently produced the time lapse spawning this dispute. Even so, however, we are persuaded that the decision of the tax court should be upheld.

This is not the first occasion that this court has had to apply the "timely mailing-timely filing" provision. While admitting in *Rich v. Commissioner of Internal Revenue*, 250 F.2d 170 (5th Cir. 1957) that the case presented a "grossly inequitable situation," the court held that "[t]he language of that section [7502] is clear, explicit, and strictly limited. It applies only if there is a postmark date or a date of registration falling within the prescribed period." *Id.* at 174. Prior to enactment of the 1954 Code, there was no similar provision with regard to timely mailing equalling timely filing. Timely filing depended upon the time of delivery of a petition to the tax court in Washington, D.C. and varied with the geographical area of mailing and the vicissitudes of the mails. Section 7502 was enacted in an attempt to alleviate inequities resulting from variations in postal performance. *See Sylvan v. Commissioner of Internal Revenue*, 65 T.C. 548 (1975). Congress was clearly attempting to establish an easily ascertainable point in time for conclu-

**2.** In 1971 the Postoffice Department became the "United States Postal Service." On February 5, 1971, "Guidelines for Area Mail Processing Plans" were distributed to all regional directors. The essence of the plan was to centralize processing of mail to cut costs and promote efficiency. However, "[a]ll post offices included in the plan will retain their local postmark." Furthermore, "[a]ll outgoing mail on which the customer desires a local postmark *must be given the postmark of that office.* Convenient arrangements must be made for the local postmark to be placed on this mail. This may necessitate a separate deposit box or other provisions which will assure the local postmark." (emphasis in original). The substance of this directive was contained in subsequent instructions in September, 1972.

The United States Postal Service's current policy directive permitting customers to obtain a local postmark, in lieu of a regional postmark, is set forth in section 352.54 of the Postal Service Manual:

At every post office, including classified stations and branches, a lobby drop must be provided for the deposit of mail for which the local postmark is desired. These lobby drops must be specifically identified for that purpose. The local postmark must be made available in every community having a post office. There will be no exceptions to this policy.

The record in this case is silent as to the availability of a lobby drop in Galveston for this purpose and our disposition of the case in no way depends upon its existence or nonexistence.

sively determining the time of filing with the tax court. We are convinced that to create an exception where the undisputed facts clearly fall within the literal and unambiguous language of the statute would do violence to the statutory scheme and substantially undermine the purpose of the provision. *See Wood v. Commissioner of Internal Revenue*, 338 F.2d 602, 603 (9th Cir. 1964); *Boccuto v. Commissioner of Internal Revenue*, 277 F.2d 549, 553 (3rd Cir. 1960).

Nor are we unmindful of the circumstances in this case which tend to counterbalance the seeming inequity to taxpayers. First, of course, we could hardly ignore the fact that the petition was mailed at 6:00 p. m. on the ninetieth day—a circumstance which could not help but raise the spectre of possible timeliness problems. In light of this fact, the alternative procedure afforded by section 7502(c)(1) of the I.R.C. could have provided valuable insurance. Thus, if the petition for redetermination is sent by registered mail, the date of registration is deemed to be the postmark date. Likewise, by regulation, if the petition is sent by certified mail and the sender has his receipt postmarked, the date of the postmark on the receipt is treated as the postmark date. 26 C.F.R. § 301.7502–1(c)(2). Finally, taxpayers have not completely lost their day in court. Once taxpayers pay the deficiency, they may file a claim for refund and, if that claim is denied, they may commence an action in district court to recover the tax paid. *See* 28 U.S.C.A. § 1346(a)(1). We entertain no reservations as to the constitutionality of the result that we reach in this case. *See Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 595–97, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).

The order of the tax court is therefore AFFIRMED.