346 S.E.2d 546

Ora BRADY

v.

Ken HECHLER, Secretary of State, Tracy W. Hylton, Janis Davis, William Richmond and Vivian Garland, Ballot Commissioners of Raleigh County, and John S. Lambert, Harold Griffith and Jimmy Graham, Ballot Commissioners of Wyoming County.

No. 17137.

Supreme Court of Appeals of West Virginia.

June 12, 1986.

Dissenting Opinion July 14, 1986.

William B. McGinley, WVEA, Charleston, for appellant.

Atty. Gen. Charlie Brown, Deputy Atty. Gen. Marianne K. Hoover, Charleston, for Hechler.

File, Payne, Sherer & Brown, E.M. Payne, III, John L. File, Beckley, for Hylton.

McHUGH, Justice:

In this mandamus action, the petitioner, Ora Brady, asked this Court to direct the Secretary of State of West Virginia and the ballot commissioners of the Ninth Senatorial District of West Virginia to strike respondent Tracy W. Hylton's name from the May 13, 1986, primary election ballot as candidate for the nomination of the Democratic Party for the office of Senator of the West Virginia Legislature. The petitioner contended that Hylton failed to timely file with the Secretary of State the certificate of candidacy for nomination required under *W.Va. Code*, 3–5–7 [1985].

This Court directed the respondents to show cause why relief should not be awarded against them. Subsequently, by order entered on April 16, 1986, we directed the

respondent Secretary of State to withdraw his certification of respondent Hylton's candidacy for nomination. *W. Va. Code*, 3–5–9 [1985].[1] Furthermore, we directed the respondent ballot commissioners to strike Hylton's name from the primary election ballot in the Ninth Senatorial District.

In this opinion, we set forth our reasoning for the relief granted to the petitioner. This Court has before it the petition, the order of April 16, 1986, all other matters of record and the argument and memoranda of law of the parties.

## I

The petitioner was a resident and registered voter of the Ninth Senatorial District. That district is made up of Wyoming County, West Virginia, and a portion of Raleigh County, West Virginia. *W. Va. Code*, 1–2–1(d)(9) [1982]. Hylton sought the nomination of the Democratic Party for the State Senate from that district.

The primary election, at which Hylton sought to be nominated, took place on May 13, 1986. Pursuant to *W. Va. Code*, 3–5–7 [1985], Hylton was required to file with the Secretary of State a certificate declaring himself a candidate for the nomination. That statute further provides: "Such certificate shall be filed with the secretary of state ... not later than the first Saturday of February next preceding the primary election day, and must be received before midnight, eastern standard time, of that day or, if mailed, shall be postmarked before that hour."[2]

Pursuant to *W. Va. Code*, 3–5–7 [1985], it was mandatory that Hylton's certificate of candidacy for nomination be received by the Secretary of State, or postmarked, before midnight, Saturday, February 1, 1986.

According to affidavits filed on behalf of Hylton, it is claimed that on February 1, 1986, in Beckley (Raleigh County), West Virginia, Hylton handed to a postal clerk at the United States Post Office an envelope addressed to the Secretary of State which purportedly contained Hylton's certificate of candidacy for nomination. It is asserted that Hylton informed the clerk that he wanted the envelope postmarked that day. It is further asserted that the clerk responded that the envelope would be postmarked that day. Moreover, it is claimed that the envelope was sent by postal authorities to Charleston, West Virginia, and then postmarked. We find that an envelope was delivered to the Secretary of State bearing a postmark of February 2, 1986.

The Secretary of State certified Hylton's candidacy for State Senate. As the record indicates, Hylton's name was placed upon the primary election ballot in the Ninth Senatorial District.

## II

As stated in *annot.*, 72 A.L.R. 290 (1931): "It is generally and almost universally held that statutory provisions in election statutes, requiring that a certificate or application of nomination be filed with a specified

---

1. *W. Va. Code*, 3–5–9 [1985], provides in part:
   By the eighty-fourth day next preceding the day fixed for the primary election, the secretary of state shall arrange the names of all candidates, who have filed announcements with him, as provided in this article, and who are entitled to have their names printed on any political party ballot, in accordance with the provisions of this chapter, and shall forthwith certify the same under his name and the lesser seal of the state, and file the same in his office.

2. *W. Va. Code*, 3–5–7 [1985], provides in part:
   Any person who is eligible to hold and seeks to hold an office (including that of member of any political party executive committee) shall file with the secretary of state, if it be an office to be filled by the voters of

more than one county, or with the clerk of the circuit court, if it be for an office to be filled by the voters of a county or subdivision less than a county, a certificate declaring himself a candidate for the nomination for such office....

   ....

   Such certificate shall be filed with the secretary of state or the clerk of the circuit court, as the case may be, not earlier than the second Monday in January next preceding the primary election day, and not later than the first Saturday of February next preceding the primary election day, and must be received before midnight, eastern standard time, of that day or, if mailed, shall be postmarked before that hour.

officer within a stipulated period of time, are mandatory." That principle is exemplified by the holdings of this Court in *State ex rel. Baker v. Bailey*, 152 W.Va. 400, 163 S.E.2d 873 (1968), and *State ex rel. Vernet v. Wells*, 87 W.Va. 275, 104 S.E. 591 (1920).

In *Baker*, vacancies occurred in three senatorial districts, after a primary election, in the nomination of the Republican Party for the office of Senator of the West Virginia Legislature. As a result, party officials filed certificates of nomination with the Secretary of State of West Virginia in an attempt to place candidates upon the ballot for the general election. Inasmuch as the certificates of nomination were not filed by the *executive committee or chairman* "of the political party *for the political division in which the vacancy occurs* ...," the certificates were filed with the Secretary of State in violation of the provisions of *W.Va. Code*, 3–5–19 [1963]. (emphasis added) Accordingly, party officials filed "amended" certificates of nomination. However, the amended certificates were not filed within the time, prior to the general election, specified by the statute, *W.Va. Code*, 3–5–19 [1963].

In awarding mandamus relief to certain citizens and taxpayers of the senatorial districts in question, this Court, in *Baker*, directed that the names of the persons attempted to be so nominated be omitted from the general election ballot. In so holding, this Court stated: "The legislature has fixed the time in which the proper committees can fill vacancies which may occur in party nominations of candidates for offices caused by death, withdrawal or failure to make a nomination and this Court can not change the provisions of the statute...." 152 W.Va. at 407, 163 S.E.2d at 877. Moreover, syllabus point 3 of *Baker* states: "Where a statute provides for a thing to be done in a particular manner or by a prescribed person or tribunal it is implied that it shall not be done otherwise or by a different person or tribunal."

Similarly, in *State ex rel. Vernet v. Wells*, the "petitions or certificates of nomination" of certain candidates for county office were filed "more than two months after expiration" of the time required by law, with regard to nominations made after primary elections. Consequently, the names of those candidates were ordered by this Court, in a mandamus proceeding, to be omitted from the general election ballot. Syllabus point 1 of *Vernet* states: "Ballot commissioners cannot lawfully place on any ticket, the name of any person to be voted for in an election, who has not been nominated agreeably to law."

*See also State ex rel. Hott v. Ewers*, 106 W.Va. 18, 144 S.E. 578 (1928), and *State ex rel. Lewis v. Board of Ballot Commissioners*, 82 W.Va. 645, 96 S.E. 1050 (1918), which cases indicate that the provisions of *W.Va. Code*, 3–5–7 [1985] are mandatory.

Consistent with the above is the decision of the Supreme Court of Wisconsin in *State ex rel. Ahlgrimm v. State Elections Board*, 82 Wis.2d 585, 263 N.W.2d 152 (1978). In *Ahlgrimm*, a candidate for circuit judge failed to timely file with the State Elections Board his "nomination papers" with regard to the "spring election" to be held in April, 1978. The filing deadline, established by statute, was January 17, 1978. Even though there were no other candidates for that judgeship, and the candidate had *timely* filed his nomination papers in the wrong office (a circuit clerk's office, rather than with the State Elections Board), the Supreme Court of Wisconsin refused to order that the candidate's name be placed upon the ballot. The court, in *Ahlgrimm*, stated:

> Because the petitioner did not file his nomination papers with the Board until February 3, 1978, he did not timely file. If the nomination papers are not timely filed, the proposed candidate is not entitled to have his name printed on the ballot.

Filing deadlines have consistently been treated as mandatory by this court. For example, in *State ex rel. Stearns v. Zimmerman*, 257 Wis. 443, 43 N.W.2d 681 (1950), this court held that where a candidate for the United States Senate did not file his nomination papers in the Secretary of State's Office or present them for filing until after the 5:00 p.m. deadline

(he tendered the papers at 5:02 p.m.), he was properly denied a place on the ballot. We reiterated that filing deadlines for nomination papers must be strictly observed. *Id.* at 445 [, 43 N.W.2d at 682]. Moreover, this court rejected the candidate's claim that the then statutory counterpart to sec. 5.01(1), Stats., calling for a liberal construction of the election law so as to give effect to the will of the electors notwithstanding informalities or failure to comply with its provisions, required the opposite conclusion. In response to this argument, this court said: '... to enlarge the time which the legislature has designated for the filing of nomination papers would be to amend the statute, not to construe it.' *Id.* at p. 446 [, 43 N.W.2d at 682].

. . . .

Because the petitioner did not timely file with the State Elections Board his nomination papers for the office of circuit judge, his name cannot appear on the ballot. As unfortunate and regrettable as this result might be, ... the burden was on the petitioner to properly file. He did not do so.

82 Wis.2d at 592–93, 597, 263 N.W.2d at 155, 158.

In the *Stearns* case, mentioned above in *Ahlgrimm,* the Supreme Court of Wisconsin stated: "[T]he time limit set by the legislature for the filing of nomination papers must be strictly observed." 257 Wis. at 445, 43 N.W.2d at 682. *See also State v. Marshall,* 633 P.2d 227 (Alaska 1981); *Tobin v. May,* 72 A.D.2d 648, 421 N.Y.S.2d 441 (1979); *MacKenzie v. Buckley,* 75 Misc.2d 379, 347 N.Y.S.2d 986 (1973); *In re Lucasi,* 46 Pa.Cmwlth. 389, 407 A.2d 81 (1979); *State ex rel. Earley v. Batchelor,* 15 Wash.2d 149, 130 P.2d 72 (1942). *Cf.*

*Bayne v. Glisson,* 300 So.2d 79 (Fla.Dist. Ct.App.1974); *State ex rel. Englert v. Meier,* 115 N.W.2d 574 (N.D.1962); *In re Hall,* 26 Pa.Cmwlth. 54, 362 A.2d 475 (1976); *Ryshpan v. Cashman,* 132 Vt. 628, 326 A.2d 169 (1974).

As stated above, an envelope bearing a postmark of February 2, 1986, was delivered to the respondent Secretary of State. That envelope contained Hylton's certificate of candidacy for nomination. Nevertheless, had Hylton complied with the provisions of *W.Va. Code,* 3–5–7 [1985], the envelope would have been "postmarked" no later than midnight, eastern standard time, February 1, 1986.

In that regard, we note that the law relating to "postmarks" has been developed on the federal level, with respect to the internal revenue laws of the United States. Pursuant to 26 U.S.C. § 7502 (1982), the "United States postmark" determines the date upon which, for federal tax law purposes, certain documents were filed or certain payments made. In *Shipley v. Commissioner,* 572 F.2d 212 (9th Cir.1977), the United States Court of Appeals noted that "[w]hen a legible postmark appears on an envelope no evidence that [a taxpayer's petition for redetermination of tax liability] was mailed on some other day will be allowed." 572 F.2d at 214. *See also Drake v. Commissioner,* 554 F.2d 736 (5th Cir. 1977), [taxpayers' petition for redetermination of tax liability, postmarked one day past the statutory deadline, was untimely, even though the taxpayers were unaware that a delay in postmarking had occurred because the mail had been "regionally cancelled," rather than cancelled at their local post office.][3] For additional cases, *see* 10 *Fed.Taxes* (P–H) para. 39,371(5).

**3.** Footnote 2 of *Drake v. Commissioner, supra,* states in part:

In 1971 the Postoffice Department became the 'United States Postal Service.' On February 5, 1971, 'Guidelines for Area Mail Processing Plans' were distributed to all regional directors. The essence of the plan was to centralize processing of mail to cut costs and promote efficiency. However, '[a]ll post offices included in the plan will retain their local postmark.' Furthermore, '[a]ll outgoing mail on which the customer desires a local postmark *must be given the postmark of that office.* Convenient arrangements must be made for the local postmark to be placed on this mail. This may necessitate a separate deposit box or other provisions which will assure the local postmark.' (emphasis in original) The substance of this directive was contained in subsequent instructions in September, 1972.

Upon all of the above, we hold that under *W.Va. Code*, 3–5–7 [1985], which provides that a person seeking election to an office "to be filled by the voters of more than one county" shall file with the Secretary of State of West Virginia a certificate of candidacy for nomination for such office, it is mandatory that the certificate be filed with the Secretary of State "not later than the first Saturday of February next preceding the primary election day, and must be received before midnight, eastern standard time, of that day or, if mailed, shall be postmarked before that hour." In particular, we hold that where the record indicated that a certificate of candidacy for nomination was received by the Secretary of State of West Virginia, or postmarked, after the time required under *W.Va. Code*, 3–5–7 [1985], for such receipt or postmarking, petitioners, seeking to strike the candidate's name from a primary election ballot, were, in view of the candidate's failure to comply with *W.Va. Code*, 3–5–7 [1985], entitled to mandamus relief.

In so holding, we are simply reasserting the principle stated in *State ex rel. Baker v. Bailey, supra,* that where a statute provides for a thing to be done in a particular manner "it is implied that it shall not be done otherwise...." In particular, the mandatory provisions of *W.Va. Code*, 3–5–7 [1985], evidence a desire upon the part of the West Virginia Legislature to preclude the exercise of discretion by the Secretary of State in these matters. Otherwise, the actions of the Secretary of State in that regard would be subject to constant allegations of arbitrariness or favoritism. Moreover, in so holding, we are recognizing, as we did in *State ex rel. Vernet v. Wells, supra,* that ballot commissioners cannot lawfully place upon an election ballot the name of a candidate "who has not been nominated agreeably to law." Hylton failed to comply with the provisions of *W.Va. Code*, 3–5–7 [1985], and the placing of his name upon the primary election ballot was unlawful.

Accordingly, as reflected in our order entered on April 16, 1986, we directed the respondent Secretary of State to withdraw his certification of respondent Hylton's candidacy for nomination, and we directed the resondent ballot commissioners to strike Hylton's name from the primary election ballot in the Ninth Senatorial District.

Writ granted.

BROTHERTON, Justice, dissenting:

The purpose of W.Va. Code § 3–5–7 [1985] was to require all candidates who elect to mail their certificates of candidacy for nomination to do so before midnight on the first Saturday of February. It is undisputed that Tracy Hylton complied with this directive. All the evidence shows that the letter was mailed at 10:30 Saturday morning. Unfortunately, through no fault of Hylton's, the post office did not postmark the letter until the next day. The letter of the law required a postmark on the correct date.

The letter and spirit, therefore, conflicted in this case. In the past we have consistently applied the spirit of the law over the letter to do justice. *See, e.g., State ex rel. Lawhead v. Kanawha County Court,* 129 W.Va. 167, 172, 38 S.E.2d 897, 900 (1946). Being late has quite often been forgiven by this Court where strict compliance would create an injustice. *See Tabler v. Weller,* 176 W.Va. 267, 342 S.E.2d 234 (1986) (fiduciary accounting filed late); *Graley v. Graley,* 174 W.Va. 396, 327 S.E.2d 158 (1985) (failure to attend hearing); *Bailey v. State Workers' Comp. Comm.,* 170 W.Va. 771, 296 S.E.2d 901 (1982) (workers' compensation claim filed late); *Parsons v. Consolidated Gas Supply Corp.,* 163 W.Va. 464, 256 S.E.2d 758 (1979) (answer filed late); *State ex rel. Bratcher v. Cooke,* 155 W.Va.

---

The United States Postal Service's current policy directive permitting customers to obtain a local postmark, in lieu of a regional postmark, is set forth in section 352.54 of the Postal Service Manual:

At every post office, including classified stations and branches, a lobby drop must be provided for the deposit of mail for which the local postmark is desired. These lobby drops must be specifically identified for that purpose. The local postmark must be made available in every community having a post office. There will be no exceptions to this policy.

850, 188 S.E.2d 769 (1972) (late appeal); *Chandos, Inc. v. Samson,* 150 W.Va. 428, 146 S.E.2d 837 (1966) (failure to attend deposition); *State ex rel. Smith v. Kelly,* 149 W.Va. 381, 141 S.E.2d 142 (1965) (late publishing constitutional amendment); *State ex rel. Chambers v. County Court of Logan,* 145 W.Va. 581, 116 S.E.2d 125 (1960) (voter's ballots delivered late). Unfortunately, the majority overlooked the fact that Hylton had done everything he could. Ignoring the concept of "substantial compliance" which we have applied so often in the past, the majority blindly followed the technical letter of the law and failed to uphold the spirit of the law, thereby allowing an injustice.

I, therefore, respectfully dissent.