392 S.E.2d 697

**Gene A. HAYNES**

**v.**

**Ken HECHLER, Secretary of State, Juanita Coe, Clerk of the Circuit Court of Wood County, Beryl A. Cunningham and R. Vance Golden, III, Ballot Commissioners of Wood County, Evelyn Waggoner, Clerk of the Circuit Court of Wirt County, Harvey J. McFee and Thelma Bibbee, Ballot Commissioners of Wirt County.**

No. 19548.

Supreme Court of Appeals of West Virginia.

April 19, 1990.

Joseph P. Albright, Albright, Bradley & Ellison, Parkersburg, for Gene A. Haynes.

Roger W. Tompkins, Atty. Gen., Catherine Schultz, Asst. Atty. Gen., Atty. Gen.'s Office, State Capitol, Charleston, for Ken Hechler.

Jeffrey Reed, Pros. Atty., Parkersburg, for Wood County Officials.

William Mercer, Pros. Atty., Elizabeth, for Wirt County Officials.

McHugh, Justice:

This mandamus proceeding is before the Court upon the petition of Gene A. Haynes. The respondents are Ken Hechler, Secretary of State, Juanita Coe, Clerk of the Circuit Court of Wood County, Beryl A. Cunningham and R. Vance Golden, III, Ballot Commissioners of Wood County, Evelyn Waggoner, Clerk of the Circuit Court of Wirt County, Harvey J. McFee and Thelma Bibbee, Ballot Commissioners of Wirt County.

The petitioner desires to be a candidate on the Democratic Party ballot for the House of Delegates, representing the Eighth Delegate District, which consists of Wood County and Wirt County. The primary election in which the petitioner desires to be a candidate is to be held on May 8, 1990. The deadline for filing for the May 8, 1990 primary election, as set forth by *W.Va.Code*, 3–5–7 [1985], was February 3, 1990.

The petitioner sought a writ of mandamus compelling the respondents to include his name on the ballot for the May 8, 1990 primary election, thus reflecting his candidacy for the House of Delegates. Due to the urgent nature of the relief sought, this Court, on March 8, 1990, entered an order granting the petitioner's request for a writ of mandamus. In this opinion, we set forth in greater detail the reasons for the decision in that order.

The petitioner alleges that he prepared a certificate declaring his candidacy and mailed it, along with a filing fee, to the respondent, Secretary of State, during the afternoon hours of February 3, 1990. The certificate and filing fee were placed in an envelope bearing a private postage meter stamp, which stamp was approved by the

United States Postal Service. The date shown, by abbreviation, on the metered stamp was February 3, 1990. The metered stamp was not cancelled by the United States Postal Service.

The petitioner was notified by letter on February 15, 1990 that his candidacy would not be certified by the respondent, Secretary of State, because the petitioner's certificate was received after the deadline of February 3, 1990. Furthermore, because the certificate was mailed, the envelope carrying the petitioner's certificate did not contain what the respondent, Secretary of State, considers to be a valid postmark pursuant to *W.Va.Code*, 3–5–7 [1985].

*W.Va.Code*, 3–5–7 [1985] provides, in relevant part:

Any person who is eligible to hold and seeks to hold an office ... shall file with the secretary of state, if it be an office to be filled by the voters of more than one county, ... a certificate declaring himself a candidate for the nomination for such office, ...

. . . .

Such certificate shall be filed with the secretary of state ... not earlier than the second Monday in January next preceding the primary election day, and not later than the first Saturday of February next preceding the primary election day, and must be received before midnight, eastern standard time, of that day or, *if mailed, shall be postmarked* before that hour.

(emphasis supplied)

The respondent, Secretary of State, contends that a valid postmark, for purposes of *W.Va.Code*, 3–5–7 [1985], can only be placed by the United States Postal Service and not by a private postage meter. Consequently, the respondent, Secretary of State, refused to certify the petitioner's candidacy.

The issue in this case is whether a private postage meter stamp is presumptively valid and accurate as a "postmark" for purposes of *W.Va.Code*, 3–5–7 [1985].

*W.Va.Code*, 3–5–7 [1985] uses the term "postmark[ ]" in a very general sense.

There is no statutory definition for this term, nor is there any rule or regulation which has been promulgated by the respondent Hechler, as Secretary of State, interpreting the term "postmark[ ]" as requiring placement by the United States Postal Service.

■ "Postmark" has been defined as "[a] stamp or mark *put on letters* or other mailable matter received at the post-office for transmission through the mails." *Black's Law Dictionary* 1050 (5th ed. 1979) (emphasis supplied).

The United States Postal Service's *Domestic Mail Manual*,[1] Part 144.111, states that: "Postage may be paid by printing meter stamps with a postage meter on any class of mail, except second-class. Metered mail is *entitled to all privileges* and subject to all conditions applying to the various classes of mail." (emphasis supplied) Part 144.534 of the *Domestic Mail Manual* states, in part: "Metered mail bearing the wrong date of mailing ... will be run through a canceling machine or otherwise postmarked *to show the proper date.*" (emphasis supplied) As noted, in this case, the envelope containing the petitioner's certificate of candidacy was not cancelled by the United States Postal Service.

The Supreme Court of Ohio, in a case dealing with the timeliness of an appeal involving unemployment compensation benefits, has held that "because the administrator [of the unemployment compensation bureau] has used the *general term* 'postmark' in Ohio Adm.Code 4146–13–01, private meter postmarks are 'postmarks,' presumptively valid and accurate, for purposes of timely filing of an appeal to the board under the code." *Bowman v. Administrator, Ohio Bureau of Employment Services*, 30 Ohio St.3d 87, 91, 507 N.E.2d 342, 344–45 (1987) (emphasis supplied).

Other courts have addressed similar situations involving the validity of private meter postmarks for the purpose of timeliness. Where a rule or regulation actually *requires* a postmark to be placed by the United States Postal Service, courts have generally upheld denials of timeliness due to the pertinent document bearing only a private meter postmark. For example, in *Perez v. State*, 629 S.W.2d 834 (Tex.Ct.App. 1982), the Court of Appeals of Texas held that a motion for a rehearing was not timely filed because such motion was mailed, bearing a private meter postmark date reflecting the filing deadline, but received by the court's clerk a day later. In holding that the motion was not timely filed, the court applied the pertinent procedural rule, which provided "that a legible *postmark affixed by the United States Postal Service* shall be prima facie evidence of the date of mailing." *Id.* at 838 (emphasis supplied by court). *See also Roberts v. Houston Fire & Casualty Co.*, 170 So.2d 188 (La.Ct.App.1964).

In some states, administrative regulations provide for private meter postmarks as an alternative to a postmark placed by the United States Postal Service. *See Mendoza v. Arizona Department of Economic Security*, 159 Ariz. 504, 768 P.2d 666 (Ct. App.1988); *Messina v. Iowa Department of Job Service*, 341 N.W.2d 52 (Iowa 1983).

Other courts have addressed the situation where a mailed envelope bears a private meter postmark *and* a United States Postal Service cancellation. As previously noted, Part 144.534 of the *Domestic Mail Manual* states, in part: "Metered mail bearing the wrong date of mailing ... will be run through a canceling machine or otherwise postmarked to show the proper date." In *Wagshal v. District of Columbia*, 430 A.2d 524 (D.C.1981), the appellant petitioned for a review of a tax assessment, and mailed such petition in an envelope bearing a private meter postmark dated March 30. The envelope, however, when it was received by the Superior Court, also bore a cancellation by the United States Postal Service, dated April 1. In affirming the untimeliness of the appellant's petition, the District of Columbia Court of Appeals held that "[a] privately metered cancellation date has been deemed controlling only when *no* [United States Postal Service] postmark is inscribed." *Id.* at 526 (empha-

---

1. *See* 39 *C.F.R.* §§ 111.1 to 111.5 (1989).

sis in original). *See also Albaugh v. State Bank of La Vernia,* 586 S.W.2d 137 (Tex.Civ.App.1979); 26 *C.F.R.* § 301.7502–1(c)(1)(iii)(*b*)(*iii*) (1989) (Internal Revenue Service mailing requirements).

We agree with the Ohio court's rationale in *Bowman,* and find it applicable to the case before us, involving candidacy for public office. The administrative provision at issue in *Bowman,* like *W.Va.Code,* 3–5–7 [1985], uses the term "postmark" in a very general sense.[2] *W.Va.Code,* 3–5–7 [1985] does not define "postmark," nor does it exclude any method by which a mailed certificate of candidacy should be so postmarked.

■ The respondent, Secretary of State, maintains that he has interpreted *W.Va. Code,* 3–5–7 [1985] as not allowing the use of private postage meter stamps and has so notified potential candidates of such interpretation. In support of this position, the respondent, Secretary of State, makes reference to a January 26, 1990 press release, wherein he stated: "Post offices are closed early, and the statute requires an actual postmark—postage meter marks are not acceptable[.]" This, however, is not proper notice. The Secretary of State's interpretation has not been promulgated as a regulation implemented pursuant to *W.Va.Code,* 3–5–7 [1985]. Moreover, there is nothing in the record to indicate that the petitioner received such "notice."

Based upon the foregoing, we conclude that a private postage meter stamp is a presumptively valid and accurate postmark for purposes of *W.Va.Code,* 3–5–7 [1985].

In this case there is no showing of dishonest behavior on the part of the petitioner by exercising control over the private postage meter which would cause a date other than the date of mailing to be reflected on the envelope containing his certificate of candidacy.[3]

The respondent, Secretary of State, also maintains that this Court's decision in *Brady v. Hechler,* 176 W.Va. 570, 346 S.E.2d 546 (1986), is dispositive of this case. Specifically, the respondent, Secretary of State, relies upon the following language from *Brady:* "[W]here a statute provides for a thing to be done in a particular manner 'it is implied that it shall not be done otherwise....'" *Id.* 176 W.Va. at 574, 346 S.E.2d at 550 (quoting syl. pt. 3, *State ex rel. Baker v. Bailey,* 152 W.Va. 400, 163 S.E.2d 873 (1968)).

*Brady,* however, is inapposite. There, the issue was the *timeliness* of the postmark required by *W.Va.Code,* 3–5–7 [1985]. In this case, however, before timeliness even becomes a factor, the issue of what constitutes a "postmark[ ]," for purposes of *W.Va.Code,* 3–5–7 [1985], is raised.

Accordingly, the petitioner's request for a writ of mandamus is granted, compelling the respondents to place the petitioner's name on the ballot for the May 8, 1990 primary election.

Writ granted.

**2.** We are aware of at least one court that is not willing to recognize the official nature of a private postage meter stamp where the statutory term "postmark" is used in a general sense. In *Upper Allegheny Joint Sanitary Authority v. Commonwealth Department of Environmental Resources,* 130 Pa.Commw. 106, 110–111, 567 A.2d 342, 345 (1989), the Commonwealth Court of Pennsylvania stated that "private postal meter dating obviously is not equivalent to a 'postmark', the date of which is determined by independent officialdom, the postal service."

**3.** The respondent, Secretary of State, expresses a valid concern with regard to the use of private postage meter stamps to satisfy the require-

ments of *W.Va.Code,* 3–5–7 [1985]. Specifically, this concern is that a private postage meter can be manipulated to reflect not the date on which a certificate of candidacy is actually mailed, but, rather, the date which a potential candidate desires to be reflected, that is, a date on or before the filing deadline.

Indeed, the result in this case may be different in the event that a showing of fraudulent or dishonest behavior on the part of the petitioner exists. However, as alluded to in the text of this opinion, there is no such showing in this case. Our holding in this case is merely that private postage meter stamps are *presumptively* valid and accurate for purposes of *W.Va.Code,* 3–5–7 [1985].