May W. WAGSHAL, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 79–749.

District of Columbia Court of Appeals.

Argued Oct. 8, 1980.

Decided April 29, 1981.

Jerome S. Wagshal, Washington, D.C., for appellant.

Frank J. McDougald, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, Washington, D.C., at the time the brief was filed, James E. Lemert and Richard L. Aguglia, Asst. Corp. Counsels, Washington, D.C., were on brief, for appellee.

Before KELLY, KERN and HARRIS, Associate Judges.

PER CURIAM:

Appellant unsuccessfully challenged a realty tax assessment before the District of Columbia Board of Equalization and Review. Thereafter, she filed a petition for review of the assessment in the Tax Division of the Superior Court. The court, upon motion by the District of Columbia and after hearing argument, dismissed the petition for review on jurisdictional grounds. The trial court rested its dismissal upon a finding that "petitioner herein [appellant] did not pay all her real property taxes for the tax year 1978 prior to her appeal to this court." There is a statutory requirement that "[a]ny person aggrieved by an assessment ... may within six months *after* payment of the tax ... appeal from the assessment to the Superior Court ...." D.C.Code 1973, § 47-2403 (emphasis added). This court has upheld the dismissal on jurisdictional grounds of a petition for review when petitioner has failed to pay all his taxes *before* filing his petition. *George Hyman Construction Co. v. District of Columbia*, D.C.App., 315 A.2d 175 (1974).

In assessing the propriety of the court's ruling here, we note that appellant's petition for review was filed on March 30th. Appellant's tax payment, according to attachments to pleadings filed with the trial court, was mailed in an envelope bearing a private meter cancellation dated March 30th and a United States Postal Service (USPS) cancellation dated April 1st. Affidavit by employees of the Department of Finance and Revenue of the District of Columbia (Department) established that a copy of appellant's tax bill was returned with her tax payment and both were date-stamped as received on April 1, 1978. As noted, the trial court concluded that appellant had not paid her tax before filing her petition for review.

Appellant argues on appeal that "the time of mailing, not receipt, is the time of payment," and urges that March 30th was the date of mailing. (Appellant's Brief at 4.) The government, "without conceding," assumes that the date of the taxpayer's mailing and not the date of the Department's receipt constitutes the date of payment. The District argues, however, that the Postal Service postmark establishes April 1st as "the date the tax payment was made, *not* March 30th, the date of the private meter cancellation." (Br. at 4.) We assume for the purpose of determining this appeal that the date of mailing by appellant is the date she paid the tax.

It has been stated that the "date of the postmark almost invariably reflects the day of mailing or a few hours thereafter." *Minnick v. State Farm Mutual Automobile Insurance Co.*, 4 Storey 125, 174 A.2d 706 (Del.Super.1961). *See also In re Powell's Estate*, 63 Nev. 19, 158 P.2d 545 (1945) (a

postmark tends to show that a letter was not put in the mail until the day shown in the postmark and will control over the affidavit of counsel as to the time of mailing); *Hurley Bros. v. Haluptzok*, 142 Minn. 269, 171 N.W. 928 (1919) (postmark bearing date May 27 was evidence to sustain the court's finding that an envelope was not mailed as early as May 24); *Kay v. Elsholtz*, 138 Minn. 153, 164 N.W. 665 (1917) (January 17 post office postmark indicated date of mailing, or at least that letter was not mailed as early as January 15). In *Abbott Construction Co. v. Hartsfield*, 237 Ga. 247, 227 S.E.2d 254 (1976), the court upheld the trial court's finding that, in deciding the contested date of mailing, the United States Post Office postmark controlled over both a private postage meter postmark and an affidavit of appellant's attorney indicating an earlier mailing date.[1]

Federal courts have noted the inherent unreliability of private postmarks, pointing out that such postmarks can be manipulated to show any desired date. A privately metered cancellation date has been deemed controlling only when *no* USPS postmark is inscribed. *P. P. Leventis, Jr. and Tina P. Leventis v. Commissioner of Internal Revenue Service*, 49 T.C. 353 (1968). Internal Revenue Service regulations give precedence to official post office postmarks as opposed to privately affixed cancellation dates.[2]

The USPS *Postal Operations Manual* states that individual letters stamped and postmarked on a private meter are processed and cancelled in the same fashion as other letters deposited in the mail bearing only a postage stamp.[3] USPS, *Postal Operations Manual* § 422.432 (May 15, 1979). The time and date a piece of mail is received by the Postal Service is shown in the official postmark by one of three codes: "AM," "PM" or "–PM." A "PM" notation in the USPS postmark indicates that the letter was received by the Postal Service on the date shown between 12:01 p. m. and the time at which all mail scheduled for collection by 5 p. m. on that day has been collected and cancelled. *Id.* at § 423.32.[4] The April 1st USPS postmark inscribed on the envelope containing appellant's tax payment displays a "PM" notation. Thus, according to the *Postal Operations Manual*, this indicates that the envelope was received by the Postal Service sometime between one minute after 12 noon and 5 p. m. on April 1st.[5]

We are persuaded that the April 1st official postmark rather than the March 30th office meter cancellation inscribed by appellant's attorney controls. Since appellant filed her petition for review on March 30th

---

1. Appellant argues that an affidavit her attorney filed "indicates that the payment of tax was mailed on March 30, and not April 1, 1978." (Reply Brief at 3.) However, this affidavit does not state on what date the attorney mailed appellant's payment. (Record at 20.)

2. The Internal Revenue Service provides:
   If the envelope has a postmark made by the U.S. Post Office in addition to [a] postmark not so made, the postmark which was not made by the U.S. Post Office shall be disregarded, and whether the envelope was mailed in accordance with this subdivision shall be determined solely by applying the rule of (a) of this subsection. [26 C.F.R. § 201.7502.-1(c)(1)(iii)(b) (1980).]
   Section (a) referred to in the above quoted passage relies on the U.S. Post Office postmark as controlling. 26 C.F.R. § 301.7502-1(c)(1)(iii)(a) (1980).

3. The only privately metered mail which receives special handling during processing and cancelling consists of bundles of letters, flats, or other irregularly shaped pieces. USPS, *Postal Operations Manual*, § 422.431, *supra*.

4. Mail received by the Postal Service between 12:01 a. m. and Noon is marked "AM" and mail received after the 5 p. m. collections is marked "–PM." *Id.*

5. Appellant's letter could have been deposited on March 31st and still receive an April 1st postmark with a "PM" notation if mail was not collected from the site of the deposit prior to 12:01 p. m. on April 1st. However, even then, her petition for review filed on March 30th would have preceded the date of mailing. We find it inconceivable that appellant's letter could have been deposited on March 30th and remained uncollected until the afternoon of April 1st in light of the Postal Service's schedule of regular daily mail collections. Appellant has provided no reason to think otherwise.

—before she paid her tax—the court correctly dismissed her petition for lack of jurisdiction pursuant to D.C.Code 1978 Supp., § 47–2403.

■ Appellant argues that since the trial court considered affidavits and other documentary evidence in addition to the pleadings when ruling on the District's motion to dismiss, it erred by failing to follow summary judgment procedures. The Tax Division's rules do not set forth any specific procedure for handling a motion to dismiss for lack of jurisdiction over the subject matter. However, federal courts deciding cases under the Federal Rules of Civil Procedure have recognized that evidence outside the pleadings may be considered when ruling on motions to dismiss for lack of jurisdiction and that there is no need in such circumstances to employ summary judgment procedures. *E. g., Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir. 1976); 2A Moore's Federal Practice ¶ 12.09[3], at 2297–98 (2d ed. 1980). Unlike the dismissal of a complaint for failure to state a claim, dismissal for lack of subject matter jurisdiction does not create *res judicata* implications which would call for the procedural protections of summary judgment treatment. *See* 2A Moore's Federal Practice, *supra* at 2313.

■ Since the trial court's order in this case makes clear that the ground for dismissal of the petition was lack of jurisdiction over the subject matter because of a failure to follow the statutory requirement that a payment of the tax must precede a challenge to the tax, the court in our view did not err by relying on the material attached to the pleadings in dismissing appellant's petition.

■ Appellant argues that it was error for the trial court to deny her leave to amend her petition for review to reflect that she had filed the petition on April 1st rather than on the date of its actual filing,

March 30th. Since the amendment sought to change the date of the filing of the petition in the Tax Division and not merely the content of the petition for review, we cannot say the court's refusal to allow such an amendment was error.

■ Finally, appellant argues that "[t]he narrow entrance into the court provided by the statutory scheme relied on by the District is too small to meet the procedural requirements of due process." (Appellant's Brief at 7.) Specifically, she asserts "the taxpayer has only *one day* in which to file an appeal if the tax is paid on the date it is due. The only way a taxpayer can lengthen this period is to pay taxes in advance, thereby giving the District early use of the money." (Appellant's Brief at 9; emphasis in original.)

This constitutional issue was not raised in the trial court so far as the record shows. "Only in exceptional cases where injustice might otherwise result will an appellate court be prompted to review questions of law which were not raised at trial." *Bullock v. Young,* D.C.Mun.App., 118 A.2d 917, 919 (1955). We are not persuaded the instant case presents a situation of exceptional circumstances or injustice which compels our review now of the constitutional issue. We note that D.C.Code 1978 Supp., § 47–1209 provides that real estate taxes are due on or before September 15th of the assessment year. When a tax bill is under $100,000, as was the case here, the statute permits payment in semiannual installments, with the second installment due not later than the following March 31st. Therefore, early payments would appear not to be exceptional. Moreover, since taxpayers learn the amount of the assessment well in advance of the deadline for filing an appeal, it is reasonable to expect them to anticipate an appeal, and be enabled to make timely filings and tax payments.[6]

*Affirmed.*

---

6. In this case, appellant received her assessment at least thirteen months before the statutory deadline for filing her petition for review and obtained a ruling from the Board of Equalization and Review nearly ten months prior to the deadline.