ARTHUR STOTTER AND DORIS STOTTER, PETITIONERS *v.* COMMISSIONER OF INTERNAL ·REVENUE, RESPONDENT

Docket No. 6833–77.      Filed March 7, 1978.

*Jon M. Adelstein* and *J. Richard Greenstein,* for the petitioners.

*Edward I. Foster,* for the respondent.

OPINION

SIMPSON, *Judge:* On August 31, 1977, the Commissioner filed a motion to dismiss this case on the ground that the Court lacks jurisdiction. The only issue for decision is whether the petition in this case was timely filed.

On March 29, 1977, the Commissioner sent, by certified mail, a deficiency notice to the petitioners at their last known address, in which he determined deficiencies in their Federal income

taxes of $18,268.99 for 1967 and $27,762.14 for 1968. On Friday, July 1, 1977, shortly after 8 a.m., the petition in this case was received at this Court's mail room, 94 days after the mailing of the deficiency notice. It was filed later that day. The envelope in which the petition was enclosed was mailed from Philadelphia, Pa., and postmarked by a private postage meter. The postmark bore the date of June 27, 1977, a Monday, 90 days after the deficiency notice was mailed. There were no other postal markings on the envelope.

Section 6213(a) of the Internal Revenue Code of 1954[1] provides that a taxpayer in the United States may file a petition with the Tax Court for a redetermination of a deficiency within 90 days after the Commissioner has mailed a deficiency notice to such taxpayer at his last known address. If a petition is received within the 90-day period, the petition is deemed filed on the date it is received. If, on the other hand, a petition is received more than 90 days after the mailing of the deficiency notice, the petition is considered filed when mailed if the requirements of section 7502 are satisfied.

Under section 7502(a), if the envelope containing the petition bears a postmark made by the United States Postal Service (Postal Service), if the date of such postmark falls within the 90-day statutory period, and if the other requirements of section 7502 are satisfied, then notwithstanding the untimely receipt, the petition will be deemed timely filed. However, Congress recognized that mail could be predated when the postmark is made by a private postage meter (H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A435 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 615 (1954)); therefore, section 7502(b) authorizes the Secretary to prescribe regulations for determining if and to what extent the timely mailing rule of section 7502(a) will be applied to non-Postal Service postmarks. Pursuant to such authority, section 301.7502–1(c)(1)(iii)(b), Proced. & Admin. Regs., was promulgated. Under such regulations, privately metered mail qualifies for the timely mailing rule of section 7502:

if the postmark bears a timely date and if the document is delivered within the time ordinarily required for the delivery of a document properly mailed on the

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

last day for its filing. If the document is not delivered within such time, the regulations provide, in the alternative, that the document will be considered timely filed only if the person who is required to file the document establishes: (1) The document was actually deposited in the mail in time to be collected from the place of deposit on or before the last day prescribed for filing; (2) the delay in delivery was attributable to delay in the transmission of the mail; and (3) the cause of such delay. [*Fishman v. Commissioner*, 51 T.C. 869, 870–871 (1969), affd. per curiam 420 F.2d 491 (2d Cir. 1970).]

The Commissioner argues that the petitioners have not satisfied either of these alternatives. First, he contends that notwithstanding the timeliness of the postmark date, the petition was not received at the Tax Court within the time ordinarily required for the delivery of a document properly mailed from Philadelphia on June 27, 1977. To support such contention, he relies on the testimony of a quality control officer of the Postal Service. The officer testified that a similar envelope addressed to the Tax Court, mailed by the same class of mail, at the same time and on the same date as the petition in this case, and postmarked by the Postal Service on June 27, 1977, would ordinarily be received at the Tax Court in 2 or 3 days. He claimed that the Postal Service's goal was to deliver 95 percent of such mail in 2 days and that 100 percent would be delivered in 3 days. Based on this testimony, the Commissioner concludes that a petition received at the Tax Court 4 days after it was mailed from Philadelphia was not received in the ordinary course of the mail.

The petitioners presented the testimony and affidavit of the secretary who mailed the petition. We found her testimony to be forthright and unequivocal, and we are persuaded that she did in fact deposit the petition in the mail in Philadelphia on June 27, 1977. Whether the petition was received at the Tax Court in the ordinary course of the mail is purely a factual question. *Leventis v. Commissioner*, 49 T.C. 353 (1968). Though the petitioners have the burden of proof, we will not lightly dismiss a petition and thereby deprive them of their opportunity to litigate the deficiency in this Court. *Leventis v. Commissioner, supra* at 355. On this record, we are not convinced that the petition was delivered beyond the ordinary time for delivering such a document.

In the first place, the postal officer did not state that 95 percent of the mail was *actually delivered* in 2 days; rather, he said that that was the Postal Service's goal. He could not say

whether that goal was attained. In the second place, the postal officer could not substantiate his conclusion that 100 percent of the mail from Philadelphia was actually delivered to Washington, D. C., within 3 days. He personally had not conducted a survey to determine the delivery time of such mail during June 1977 or for any period prior thereto, and if studies of this nature had been conducted by the Postal Service, he was not familiar with the results of such studies. Finally, since the petition was delivered to the Tax Court early on Friday, July 1, it may well have been received in Washington late on Thursday, June 30, or only 3 days after it was mailed in Philadelphia.

We have no reason to doubt the reliability of the officer of the Postal Service who appeared before us; yet, it must be recognized that he was not a completely disinterested expert witness—in recent years, the Postal Service has been criticized frequently in connection with the delivery of the mail, and the organization has an interest in presenting the facts in the most favorable light. See S. Rept. 94–966 (1976), reprinted in U. S. Code Cong. & Adm. News 2400, 2405–2406, 94th Cong., 2d Sess. (1976); H. Rept. 91–1104 (1970), reprinted in U. S. Code Cong. & Adm. News 3649–3654, 91st Cong., 2d Sess. (1970); 122 Cong. Rec. S14,287–S14,307 (1976).[2] As the trier of fact, we must evaluate the evidence in the light of our own "experience with the mainsprings of human conduct to the totality of the facts of each case." *Commissioner v. Duberstein,* 363 U.S. 278, 289 (1960). As a factual matter, the ordinary time for delivering mail may change from time to time; our experience is that the time ordinarily required for the delivery of the mail 10 or 20 years ago was less than the time now required. Although the officer from the Postal Service admitted that it might take 2 or 3 days to deliver mail to Washington, D. C., from Philadelphia, it appears

---

[2]In the congressional debate on what eventually became the Postal Reorganization Act Amendments of 1976, Pub. L. 94–421, 90 Stat. 1303, the late Senator Humphrey used the following dramatic language to describe the current operations of the Postal Service:

"The present Postal Service is really a nightmare of mismanagement. It just does not get the job done. Every Senator, if he is honest with himself, knows how long it takes to get a letter from his constituents here to Washington, D.C. We should reestablish the Pony Express. Really, they could run it, actually, with marathon runners. The Greek that ran from one place to another to tell that the Spartans were coming could have done it quicker than some of these present routes.

    *       *       *       *       *       *       *

"The amount of time to get a letter from Washington to New York is unbelievable. And they say they do it all by air mail. They must be flying it on the backs of wounded pigeons. What do they mean, air mail? It is just outrageous. [122 Cong. Rec. S14,428 (1976).]"

to us that it is not out of the ordinary for a letter to he delivered at the Tax Court 4 days after it is deposited in the mail in Philadelphia. Consequently, we find that the petition was received and filed at the Tax Court in the ordinary course of the mail. *Leventis v. Commissioner, supra.*

In view of our resolution of this issue, it is not necessary to address the Commissioner's argument that the petitioners have not complied with the alternate requirements of the regulations.

The Commisioner's motion to dismiss will be denied.

*An appropriate order will be issued.*