149 T.C. No. 20

UNITED STATES TAX COURT

LINCOLN C. PEARSON AND VICTORIA K. PEARSON, Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11084-15.                                    Filed November 29, 2017.

Under I.R.C. sec. 6213(a), the last day for Ps to petition the Court was Apr. 22, 2015. The Court received their petition via certified mail on Apr. 29, 2015. The envelope containing the petition was properly addressed and had been deposited at a U.S. post office with sufficient postage prepaid through Stamps.com, a USPS-approved commercial vendor. Affixed to the envelope containing the petition was a Stamps.com postage label bearing the date Apr. 21, 2015, the date on which the postage was paid and the label printed. The envelope did not bear a USPS postmark. The USPS entered the envelope into its tracking system for certified mail on Apr. 23, 2015.

1. <u>Held</u>: The date shown on the Stamps.com postage label was a "postmark[] not made by the United States Postal Service" within the meaning of I.R.C. sec. 7502(b).

2. <u>Held</u>, <u>further</u>, data retrieved from the USPS tracking system for certified mail is not "a postmark made by the U.S. Postal Service"

within the meaning of sec. 301.7502-1(c)(1)(iii)(B)(3), Proced. & Admin. Regs.

3. Held, further, Ps' petition was timely mailed under subdiv. (iii)(B)(1) or (2) of sec. 301.7502-1(c)(1), Proced. & Admin. Regs., and was timely filed under I.R.C. sec. 7502(b).

4. Held, further, the Court has jurisdiction over Ps' case. Tilden v. Commissioner, 846 F.3d 882 (7th Cir. 2017), rev'g and remanding T.C. Memo. 2015-188, followed.

Paul W. Jones, for petitioners.

Skyler K. Bradbury, David W. Sorensen, and Robert A. Varra, for respondent.

OPINION

LAUBER, Judge: This case presents a jurisdictional question identical to that presented by Tilden v. Commissioner, T.C. Memo. 2015-188, rev'd and remanded, 846 F.3d 882 (7th Cir. 2017). On May 29, 2015, the Internal Revenue Service (IRS or respondent) filed a motion to dismiss this case for lack of jurisdiction. We held that motion in abeyance pending resolution of the taxpayer's appeal of our decision in Tilden, in which we had granted a similar motion by the Commissioner. After the U.S. Court of Appeals for the Seventh Circuit handed down

its opinion in <u>Tilden</u>, and pursuant to its mandate, we vacated our earlier decision in that case on March 13, 2017, and denied the Commissioner's motion to dismiss.

The instant case would be appealable, absent stipulation to the contrary, to the U.S. Court of Appeals for the Eighth Circuit. <u>See</u> sec. 7482(b)(1)(A). Respondent, however, no longer objects to our assumption of jurisdiction. On March 15, 2017, the parties filed a joint status report stating: "Since the facts of the present case substantially match the facts at issue in <u>Tilden</u>, the parties anticipate that the Court will deny respondent's motion to dismiss for lack of jurisdiction."

The parties have correctly anticipated what we will do. We agree in all respects with the Seventh Circuit's analysis and will accordingly deny respondent's motion to dismiss.

## Background

The following facts are derived from the parties' pleadings, motion papers, and the exhibits and declaration attached thereto. These facts are stated solely for the purpose of disposing of the motion and not as findings of fact in this case. <u>See</u> Rule 1(b); Fed. R. Civ. P. 52(a); <u>Cook v. Commissioner</u>, 115 T.C. 15, 16 (2000), <u>aff'd</u>, 269 F.3d 854 (7th Cir. 2001).

On January 22, 2015, the IRS sent petitioners, by certified mail to their last known address, a notice of deficiency for tax years 2010, 2011, and 2012. Peti-

tioners resided in Arkansas at that time and at the time of filing their petition. The notice determined for the years at issue deficiencies aggregating in excess of $80,000 and accuracy-related penalties under section 6662(a) computed as 20% of those amounts.[1]

Section 6213(a) provides, in the case of a notice addressed to a taxpayer within the United States, that the taxpayer may petition this Court "[w]ithin 90 days * * * after the notice of deficiency * * * is mailed." For petitioners, this 90-day period expired on April 22, 2015. That day was not a Saturday, Sunday, or legal holiday in the District of Columbia. See sec. 6213(a).

The Court received the petition on Wednesday, April 29, 2015, and filed it that same day. The petition was sent to the Court via certified mail delivery provided by the U.S. Postal Service (USPS). The envelope in which the petition was mailed bore a 20-digit USPS certified mail tracking number. The envelope did not have a USPS postmark, but it did have a "postmark" from Stamps.com, an online postage services provider.[2] Stamps.com enables ordinary consumers to "enjoy the

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2]Stamps.com is a publicly traded company that provides internet-based post-
(continued...)

convenience of a traditional postage meter." <u>Tilden v. Commissioner</u>, 846 F.3d at 885.

Petitioners have supplied a declaration under penalty of perjury from Katelynn Marshall, an administrative assistant at the law firm representing them. She avers that on April 21, 2015, she created through Stamps.com a postage label with official U.S. postage of $7.82 (the cost of ordinary postage plus the supplement for certified delivery). That label shows the Court's correct address, the certified mail tracking number referenced above, and the date "04/21/2015," reflecting the date on which the label was created.

Ms. Marshall further avers that she affixed this label to an envelope containing the petition and sealed that envelope. According to her declaration, she personally carried the sealed envelope later that day to the U.S. Post Office at 2350 Arbor Lane, Salt Lake City, Utah 84117, and deposited it in the U.S. mail.

Ms. Marshall attached to her declaration a USPS "certified mail receipt" bearing the tracking number referenced above. Written by hand on that receipt are

---

[2](...continued)
age services. It enables users to buy and print USPS-approved postage directly from their computers. See http://www.stamps.com/company-info ("Simply log-in to Stamps.com, print your postage then drop your letters and packages into any mailbox, hand them to your postal carrier or schedule a USPS pick-up right through the software.").

petitioners' names, the words "United States Tax Court" (in the block captioned "Send To"), and the date "4/21/15" (in the block captioned "Postmark Here").  Ms. Marshall avers that she made these notations when she mailed the envelope.

The USPS maintains an online tracking system that enables customers to track the progress of certified mail.  The earliest entry in that system for the item bearing the certified mail number referenced above shows its arrival at a Salt Lake City USPS facility, with ZIP Code 84199, at 5:39 p.m. on April 23, 2015.  (That is a different USPS facility from the one at which Ms. Marshall mailed the petition; the latter has ZIP Code 84117.)  Subsequent entries in the USPS tracking system show that the item left the USPS facility with ZIP Code 84199 at 6:57 p.m. on April 23, 2015, and was delivered to this Court at 11:02 a.m. on April 29, 2015.  As noted previously, the Court filed the petition an hour later that day.

The Court requested supplemental briefing from the parties on respondent's motion to dismiss.  In a filing dated August 21, 2015, respondent represented that he had contacted a USPS specialist regarding the timing questions presented by this case.  That specialist advised respondent's counsel of her determination that it was "highly unlikely the mail piece entered P&DC [the Salt Lake Processing and Distribution Center] on 4/21 and sat for two days before processing."  However, on the basis of USPS "logistical data and the time stamp of processing for this cer-

tified mail piece," the USPS specialist advised respondent's counsel that "it is the belief of our Salt Lake P&DC Operations Support office that the mail piece in question was most likely deposited and collected between 4:30 pm and 6:10 pm on 4/22." Respondent attached to his supplemental response the complete email exchange between the USPS specialist and respondent's counsel.

As noted earlier, the last day for filing the petition in this case was April 22, 2015. On the basis of the information set forth above, respondent concluded that the petition was "most likely deposited * * * with the USPS on April 22, 2015, which is within the time prescribed by sections 6213(a) or 7502." Respondent accordingly joined petitioner in urging "that the Court deny respondent's motion to dismiss for lack of jurisdiction."

## Discussion

I.    The Court's Deficiency Jurisdiction

The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. See sec. 7442; Guralnik v. Commissioner, 146 T.C. 230, 235 (2016); Moosally v. Commissioner, 142 T.C. 183, 195-196 (2014). In determining whether we have jurisdiction over a given matter, this Court and the Courts of Appeals have given our jurisdictional provisions a broad, practical construction rather than a narrow, technical one. Bongam

v. Commissioner, 146 T.C. 52, 55 (2016); Lewy v. Commissioner, 68 T.C. 779, 781 (1977). When a statutory provision is capable of two interpretations, "we are inclined to adopt a construction which will permit us to retain jurisdiction without doing violence to the statutory language." Traxler v. Commissioner, 61 T.C. 97, 100 (1973).

The Court's jurisdiction in a deficiency case depends on the issuance of a valid notice of deficiency and a timely filed petition. Rule 13(a), (c); Monge v. Commissioner, 93 T.C. 22, 27 (1989); Normac, Inc. v. Commissioner, 90 T.C. 142, 147 (1988). The Code authorizes the Commissioner, after determining a deficiency, to send a notice of deficiency by certified or registered mail to the taxpayer at his last known address. Sec. 6212(a) and (b). The taxpayer then has 90 days (150 days if the notice was mailed to a foreign address) to file a petition with this Court for redetermination of the deficiency. Sec. 6213(a). This 90-day filing deadline is jurisdictional. See Andrews v. Commissioner, 563 F.2d 365, 366 (8th Cir. 1977) ("The law is clear that the Tax Court does not have jurisdiction over an untimely petition."); Tilden, 846 F.3d at 886-887 (collecting cases); Guralnik, 146 T.C. at 238 ("In cases too numerous to mention, dating back to 1924, we have held that the statutorily-prescribed filing period in deficiency cases is jurisdictional." (citing Satovsky v. Commissioner, 1 B.T.A. 22, 24 (1924))).

II.     Governing Statutory and Regulatory Structure

The question is whether petitioners met the 90-day deadline for filing their petition under the "timely mailed, timely filed" rule set forth in section 7502. If a taxpayer sends his petition for delivery to the Court "by United States mail" within the prescribed period for filing the petition, but the Court receives the petition after that period has ended, the date of the United States postmark stamped on the envelope in which the petition is mailed "shall be deemed to be the date of delivery." Sec. 7502(a)(1). This provision "shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by regulations prescribed by the Secretary." Sec. 7502(b).

The Secretary has promulgated the regulations anticipated by Congress. See sec. 301.7502-1(c), Proced. & Admin. Regs. This regulation uses the terms "postmark made by the U.S. Postal Service" and "postmark * * * not made by the U.S. Postal Service." Id. subpara. (1)(iii)(B)(3). But the regulation does not define either term or furnish examples of postmarks not made by the USPS.

With respect to a postmark not made by the USPS the regulation provides:

 (1) In general.--If the postmark on the envelope is made other than by the U.S. Postal Service--

 (i) The postmark so made must bear a legible date on or before the last date * * * prescribed for filing the document * * *; and

(ii) The document * * * must be received by the agency, officer, or office with which it is required to be filed not later than the time when a document * * * contained in an envelope that is properly addressed, mailed, and sent by the same class of mail would ordinarily be received if it were postmarked at the same point of origin by the U.S. Postal Service on the last date * * * prescribed for filing * * *. [Sec. 301.7502-1(c)(1)(iii)(B)(1), Proced. & Admin. Regs.]

If the taxpayer satisfies the first of these requirements but not the second,

the regulation provides as follows in subdivision (iii)(B)(2):

(2) Document or payment received late.--If a document * * * described in paragraph (c)(1)(iii)(B)(1) is received after the time when a document * * * so mailed and so postmarked by the U.S. Postal Service would ordinarily be received, the document * * * is treated as having been received at the time when a document * * * so mailed and so postmarked would ordinarily be received if the person who is required to file the document * * * establishes--

(i) That it was actually deposited in the U.S. mail before the last collection of mail from the place of deposit that was postmarked * * * by the U.S. Postal Service on or before the last date * * * prescribed for filing the document * * *;

(ii) That the delay in receiving the document * * * was due to a delay in the transmission of the U.S. mail; and

(iii) The cause of the delay.

III.   The Tilden Case

The taxpayer in Tilden was represented by the same counsel representing

petitioners, and the facts of the two cases (insofar as they concern our jurisdiction)

are virtually identical. The last day for filing the petition in <u>Tilden</u> was April 21, 2015. The envelope in which that petition was mailed had a Stamps.com postage label showing that date. The same administrative assistant averred that she had personally carried the envelope to the same Salt Lake City post office (the one with ZIP Code 84117) and mailed it on April 21, 2015. The petitions in the two cases were received and filed by the Court minutes apart on April 29, 2015.

This Court concluded in <u>Tilden</u> that neither subdivision of the regulation quoted above applied and that the outcome should instead be determined by section 301.7502-1(c)(1)(iii)(B)(<u>3</u>), Proced. & Admin. Regs. That provision applies "[i]f the envelope has a postmark made by the U.S. Postal Service in addition to a postmark not so made." In that event, "the postmark that was not made by the U.S. Postal Service is disregarded." <u>Ibid.</u>

The envelope in <u>Tilden</u>, like the envelope here, did not actually have a USPS postmark, but only a Stamps.com postage label showing the date on which the label had been generated. But the record in <u>Tilden</u>, like the record here, included USPS tracking information showing that "the envelope entered the U.S. mail system on April 23, 2015." T.C. Memo. 2015-188, 110 T.C.M. (CCH) 314, 316. This Court concluded that this tracking datum could "serve as the functional equivalent of, or be tantamount to, a USPS postmark." <u>Id.</u> at 316 (citing <u>Boultbee</u>

v. Commissioner, T.C. Memo. 2011-11, 101 T.C.M. (CCH) 1031, 1033-1034). Invoking subdivision (iii)(B)(3) of the regulation, this Court disregarded the Stamps.com postmark and concluded that the petition, deemed to have been post-marked on April 23, 2015, was not "timely mailed." We accordingly granted the Commissioner's motion to dismiss for lack of jurisdiction.

The taxpayer sought reconsideration in Tilden, and the Commissioner agreed that reconsideration was warranted. The Commissioner did not dispute that the petition had actually been mailed, as averred by the taxpayer's representative, on April 21, 2015. He further agreed that the petition satisfied the requirements of subdivision (iii)(B)(1) of the regulation "by displaying a timely postmark not made by the USPS and arriving within the time first class mail would ordinarily be received in Washington, D.C. from Utah." And he joined the taxpayer in urging that this Court had erred in relying on subdivision (iii)(B)(3) of the regulation, because the envelope in fact had no USPS postmark. Concluding that the petition for these reasons had been timely mailed and thus timely filed, the Commissioner did not object to the Court's granting the taxpayer's motion for reconsideration, and on such reconsideration, denying the motion to dismiss.

We nevertheless declined to reconsider our opinion. We cited the axiom that "jurisdiction cannot be conferred on this Court by agreement" of the parties.

Dorn v. Commissioner, 119 T.C. 356, 357 (2002); Mohawk Glove Corp. v. Commissioner, 2 B.T.A. 1247 (1925). And we concluded that the parties had not shown "why official records of the U.S. Postal Service in the form of USPS Tracking data should not serve as a postmark."

The Seventh Circuit reversed. It began by reaffirming the principle that the 90-day filing period in section 6213(a) is a jurisdictional requirement, as opposed to a "case-processing rule" subject to waiver and equitable tolling. Tilden, 846 F.3d at 886. "For many decades," the court stated, "the Tax Court and multiple courts of appeals have deemed § 6213(a) as a whole to be a jurisdictional limit on the Tax Court's adjudicatory competence." Ibid. In Guralnik, the Court of Appeals noted, this Court "unanimously conclude[d] that filing deadlines for petitions seeking its review are jurisdictional under the Supreme Court's current approach." Ibid. (citing Guralnik,146 T.C. at 238). Reluctant to disturb this body of precedent, the Seventh Circuit "accept[ed] Guralnik's conclusion and treat[ed] the statutory filing deadline as a jurisdictional one." Id. at 887.

While recognizing the rule that "litigants cannot stipulate to jurisdiction," the Court of Appeals pointed out that the parties (absent improper collusion) "may agree on the facts that determine jurisdiction." Ibid. (emphasis in original). By the time Tilden reached the Seventh Circuit, the Commissioner had conceded that

the envelope containing the petition was "handed to the Postal Service on April 21, 2015," the last day for filing. Ibid.; see sec. 301.7502-1(c)(1)(iii)(B)(2)(i), Proced. & Admin. Regs. (requiring that the item be "actually deposited in the U.S. mail * * * on or before the last date * * * prescribed for filing"). And the Commissioner had acknowledged that "certified mail often takes eight days to reach the Tax Court from Utah." Tilden, 846 F.3d at 887; see sec. 301.7502-1(c)(1)(iii)(B)(1)(ii), Proced. & Admin. Regs. (requiring that the item have been received not later than the time when an identical document postmarked by USPS "would ordinarily be received").

Given these concessions by the Commissioner, the Seventh Circuit ruled that the only basis for dismissing the taxpayer's petition would be the legal conclusion adopted by this Court--namely, that subdivision (iii)(B)(3), which addresses situations where there is "a postmark made by the U.S. Postal Service in addition to a postmark not so made," is "the sole sub[division] entitled to a controlling role." Tilden, 846 F.3d at 887. The Court of Appeals had no difficulty rejecting that conclusion, noting that the envelope in which the petition had been mailed "had only one postmark." "The regulation does not ask whether a date that is not a 'postmark' is as good as a postmark. It asks whether there are competing postmarks." Ibid. Concluding with a reminder to lawyers about the inadvisability of

waiting until the last day to mail a jurisdictional document, the Seventh Circuit held that the petition had been timely mailed and thus timely filed. Id. at 888.

IV.    Analysis

Because we agree with the Seventh Circuit on all relevant points, our analysis can be brief. A Stamps.com postage label does not literally "mark" the entry of mail into the "post." Rather, the date shown on that label indicates the date on which the consumer purchased the postage and electronically generated the label. But both this Court and the Seventh Circuit in Tilden agreed that the date appearing on a Stamps.com postage label should be regarded as a "postmark[] not made by the United States Postal Service." Sec. 7502(b). In conceding that petitioners' petition was timely mailed under the regulations discussed above, respondent necessarily agrees that this is a case in which "the postmark on the envelope is made other than by the U.S. Postal Service." Sec. 301.7502-1(c)(1)(iii)(B)(1), Proced. & Admin. Regs. The Secretary's construction of his own regulations is entitled to deference. Rand v. Commissioner, 141 T.C. 376, 380-381 (2013) (citing Auer v. Robbins, 519 U.S. 452, 461 (1997)).

There is nothing in the legislative history of section 7502(b), or in the regulations promulgated by the Secretary, to suggest that a postage label of this sort should be regarded as something other than a "postmark[] not made by the United

States Postal Service." Section 7502(b), enacted as part of the 1954 Code, ch. 736, sec. 7502, 68A Stat. at 896, was originally captioned "Stamp Machine." Congress expressed the rationale for this provision as follows: "Since it is possible to predate postmarks where mailing machines or other devices are used, subsection (b) provides that a postmark not made by the United States post office shall be deemed the date of delivery only to the extent permitted by regulations." H.R. Rept. No. 83-1337, at A435 (1954).

Our case law reflects this legislative history. Almost 50 years ago, we explained that section 7502(b) reflects congressional concern that "postmarks made by private postage meters could bear any date desired by the sender." Fishman v. Commissioner, 51 T.C. 869, 872-873 (1969), aff'd, 420 F.2d 491 (2d Cir. 1970). Congress thus "refused to apply the same rules to both metered and unmetered mail." Ibid. We have accordingly recognized that the output of a private postage meter qualifies as a "postmark not made by the United States Postal Service." See Herrera v. Commissioner, T.C. Memo. 2012-308, 104 T.C.M. (CCH) 540, 544; Chang v. Commissioner, T.C. Memo. 1998-298, 76 T.C.M. (CCH) 290, 291.[3]

---

[3]Deploying a dictionary, the dissent asserts, see dissenting op. p. 30, that the term "postmark" must be limited to "an official postal marking on a piece of mail." But if the term were limited to official markings made by the U.S. Postal Service, there could be no such thing as a "postmark[] not made by the United States Postal

(continued...)

As the Seventh Circuit explained in <u>Tilden</u>, 846 F.3d at 885, a Stamps.com postage label is the modern equivalent of the output of an old-fashioned postage meter. We find no plausible basis for making a legally significant distinction between these two means of affixing postage. We accordingly accept as the premise of our analysis that a Stamps.com postage label, like the output of a private postage meter, constitutes a "postmark[] not made by the United States Postal Service." Sec. 7502(b).

Given this premise, we have no difficulty concluding that the motion to dismiss for lack of jurisdiction must be denied. Subdivision (iii)(B)(<u>3</u>) of the regulation, governing competing postmarks, is inapplicable here for the reasons stated by the Seventh Circuit in <u>Tilden</u>. And the petition was timely mailed regardless of whether we consider subdivision (iii)(B)(<u>1</u>) or subdivision (iii)(B)(<u>2</u>) of the regulation to be controlling.

---

[3](...continued)
Service," and section 7502(b) would then have no possible application. Congress made clear in the legislative history that it intended section 7502(b) to apply to the output of "mailing machines or other devices." H.R. Rept. No. 83-1337, <u>supra</u>, at A435 (1954). It is well established that courts should construe legislative enactments to avoid rendering them meaningless. See <u>United States v. Menasche</u>, 348 U.S. 528, 538 (1955) (quoting <u>Montclair v. Ramsdell</u>, 107 U.S. 147, 152 (1883)); <u>Market Co. v. Hoffman</u>, 101 U.S. 112, 115 (1879) (construing a statute so that "no clause, sentence, or word shall be superfluous, void, or insignificant").

With respect to subdivision (iii)(B)(1), the Stamps.com postmark "bear[s] a legible date" (April 21, 2015) which was "on or before the last date * * * prescribed for filing the document" (April 22, 2015). See sec. 301.7502-1(c)(1)(iii)(B)(1)(i), Proced. & Admin. Regs. And the Commissioner has acknowledged that "certified mail often takes eight days to reach the Tax Court from Utah." Tilden, 846 F.3d at 887. The envelope containing the petition, received by this Court on April 29, 2015, was thus received "not later than the time when a document * * * would ordinarily be received if it were postmarked * * * by the U.S. Postal Service on the last date * * * prescribed for filing." Sec. 301.7502-1(c)(1)(iii)(B)(1)(ii), Proced. & Admin. Regs.

Alternatively, if the latter requirement were deemed unsatisfied, the petition would still be timely under subdivision (iii)(B)(2), which applies to a document bearing a non-USPS postmark that is "received late." The critical question under subdivision (iii)(B)(2) is whether the document "was actually deposited in the U.S. mail * * * on or before the last date * * * prescribed for filing the document." Sec. 301.7502-1(c)(1)(iii)(B)(2)(i), Proced. & Admin. Regs.

The last date prescribed for filing the petition was April 22, 2015. Petitioners' representative avers that she actually deposited the envelope in the U.S. mail on April 21, 2015. While unsure about that, respondent agrees that the envelope,

at worst, was "most likely deposited * * * with the USPS on April 22, 2015."

Either way, the petition was timely mailed under subdivision (iii)(B)(2).[4]

In sum, we conclude that the date appearing on the Stamps.com postage label should be regarded as a "postmark[] not made by the United States Postal Service." Sec. 7502(b). The envelope containing the petition was timely mailed under the regulations the Secretary has promulgated to govern this situation, regardless of whether subdivision (iii)(B)(1) or (iii)(B)(2) is thought to be applicable. Subdivision (iii)(B)(3), on which we relied in Tilden, is inapplicable for the reasons stated by the Seventh Circuit in that case. Because the petition was timely mailed under the Secretary's regulation implementing section 7502(b), it was timely filed under section 6213(a).[5]

---

[4]If the petition were thought to have been "received late," there is no dispute that the other two requirements of subdivision (iii)(B)(2) were met, i.e., that the late delivery was attributable to a "delay in the transmission of the U.S. mail" that was outside petitioners' control. See sec. 301.7502-1(c)(1)(iii)(B)(2)(ii) and (iii), Proced. & Admin. Regs.

[5]The dissent insists, see dissenting op. p. 34, that the relevant inquiry must be "whether the Stamps.com label is equivalent to a postmark in the sense of verifying the timeliness of a submission." But Congress recognized in 1954 that the output of mailing machines and similar devices would not necessarily verify the timeliness of a submission. H.R. Rept. No. 83-1337, supra at A435. That is why Congress provided, in section 7502(b), that the timely mailing rule "shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by regulations prescribed by the Secretary." The

(continued...)

To reflect the foregoing,

<u>An order will be issued denying respondent's motion to dismiss for lack of jurisdiction</u>.

Reviewed by the Court.

MARVEL, FOLEY, VASQUEZ, GALE, THORNTON, GOEKE, HOLMES, KERRIGAN, BUCH, NEGA, PUGH, and ASHFORD, <u>JJ.</u>, agree with this opinion of the Court.

---

[5](...continued)
Secretary has issued the anticipated regulations. They require the taxpayer to prove the timeliness of his submission by showing that the non-USPS-postmarked item arrived no later than a USPS-postmarked item would have arrived or (if that test is not met) that the non-USPS-postmarked item "was actually deposited in the U.S. mail" on or before the filing date. Sec. 301.7502-1(c)(1)(iii)(B)(2)(i), Proced. & Admin. Regs. The dissent proposes, <u>see</u> dissenting op. p. 34, a test for timeliness derived from several State court opinions. This seems an odd proposal given Congress' instruction that the timely mailing rule shall apply "to the extent provided by regulations prescribed by the Secretary." Sec. 7502(b).

BUCH, J., concurring:  I join, without reservation, the opinion of the Court. I write separately to expand our statement:  "We find no plausible basis for making a legally significant distinction between these two means of affixing postage", see op. Ct. p. 17, referring to a postage meter and a Stamps.com mailing label.  A review of the various means of creating and affixing postage makes clear that there is no practicable difference among "official" U.S. Postal Service mailing labels, postage meters, and internet-based postage.

## I.    Non-U.S. Postal Service Postmarks

As technology evolves, so must the law.  But the law must evolve in a manner that is consistent with the statutes as written by Congress.  Fortunately, when it comes to postmarks, Congress explicitly left room in the statute for postmarks created by someone other than the U.S. Postal Service and for agency rulemaking to fill in the details.  See sec. 7502(b).

The Code couldn't be any clearer, specifically referring to "postmarks not made by the United States Postal Service".  Id.  It may well be that when Congress first enacted section 7502(b), "postmarks not made by the United States Postal Service" referred to private postage meters that are licensed by the U.S. Postal

Service and that have been around since at least the 1920s.[1]  But Congress did not limit "postmarks not made by the United States Postal Service" to private postage meters.  The statute is clear on its face, and we need not look beyond the statute to conclude that postmarks can include those shown on a Stamps.com mailing label.

If we did look beyond the statute, the little we would find would indicate that "postmarks not made by the United States Postal Service" is not limited to private postage meters.  When section 7502(b) was enacted in 1954 its heading was "Stamp Machine".  Internal Revenue Code of 1954, ch. 736, sec. 7502(b), 68A Stat. at 806.  Congress changed the heading to "Postmarks" in 1966, without elaboration or explanation.  Act of Nov. 2, 1966, Pub. L. No. 89-713, sec. 5(a), 80 Stat. at 110.

There is little that we can glean from that change.  We presume that Congress did not undertake a meaningless act.  See 15 W. 17th St. LLC v. Commissioner, 147 T.C. ___, ___ (slip op. at 48) (Dec. 22, 2016) ("When construing a statute, '[i]t is our duty 'to give effect, if possible, to every clause and word' so as to avoid rendering any part of the statute meaningless surplusage.'" (quoting United States v. Menasche, 348 U.S. 528, 538 (1955), and Montclair v.

---

[1]For example, Pitney Bowes Inc. is a publicly traded company that has produced private postage meters since the 1920s.  See https://www.pitney bowes.com/us/our-story.html.

Ramsdell, 107 U.S. 147, 152 (1883))). So we must assume that there was meaning behind the change Congress made to the heading.[2] The only plausible interpretation is that, to the extent the words "stamp machine" would have limited the effect of section 7502(b) to private postage meters, that limit did not survive the 1966 amendment.

II.     Methods of Affixing Postage

Today there are myriad ways to purchase and apply postage, and many of those ways come with preprinted dates. Indeed, whether acquired from the U.S. Postal Service, a licensed meter provider, or an online resource, the mailing labels are nearly identical. And the risk that someone might print a label on one day and mail the item on another is no different.

A.     U.S. Postal Service's Service Counter

The U.S. Postal Service's most traditional services are offered in the post office. Customers can enter a post office and purchase postage from a U.S. Postal Service employee at the service counter. The U.S. Postal Service employee prints a label or postmarks the item indicating the date on which the label or postmark is

---

[2]Statutory titles and headings cannot limit the plain meaning of a statute, but they may be used for interpretive purposes. Dixon v. Commissioner, 132 T.C. 55, 81 (2009) (citing Bhd. of R.R. Trainmen v. B&O R.R. Co., 331 U.S. 519, 528-529 (1947)).

purchased. The U.S. Postal Service employee can deposit the item or print the label for the customer to affix and deposit in the mail.

B.      U.S. Postal Service's Self-Service Kiosk

The U.S. Postal Service's automated postal centers, also known as self-service kiosks, allow customers to access U.S. Postal Service services without the hassle of waiting in line or visiting during normal business hours. Kiosks are self-sufficient, do not require U.S. Postal Service employee assistance, and are available to customers at any time.[3] U.S. Postal Service kiosks "allow[] the public to weigh and rate packages, purchase and print postage and purchase stamps", and eventually deposit in a U.S. Postal Service drop box.[4] Printed postage indicates that date on which the customer uses the kiosk to pay and print postage.

---

[3]See U.S. Postal Service Handbook PO-106, Automated Postal Center Program Handbook 121 (available at the American Postal Workers Union website, http://www.apwu.org/ir-usps-handbooks-manuals).

[4]U.S. Postal Service Handbook PO-106, 132.1, 132.21, 132.22.

C.     <u>U.S. Postal Service's Click-n-Ship</u>

U.S. Postal Service Click-n-Ship gives customers freedom to buy U.S. Postal Service postage without leaving their homes or offices.[5]  Click-n-Ship allows consumers to "Pay, Print & Ship from Anywhere" and advertises that "[w]ith USPS online, your Post Office is where you are."[6]  Similar to kiosks, Click-n-Ship allows consumers to "Pay, Print & Ship" without access to a Post Office or U.S. Postal Service employee.  Click-n-Ship labels include the date on which postage is purchased online.

D.     <u>Postage Meters Licensed by the U.S. Postal Service</u>

Postage meters are authorized by the U.S. Postal Service and print postmarks or labels using licensed machines.  <u>See</u> 39 U.S.C. sec. 404(a)(2), (4) (2006); <u>see also</u> 39 C.F.R. sec. 501.2 (2015); U.S. Postal Service, Domestic Mail Manual (DMM), 82 Fed. Reg. 28559 (Jan. 22, 2017).[7]  Postage meters print

---

[5]<u>See</u> https://www.usps.com/business/postage-options.htm; <u>see also</u> http://pages.ebay.com/usps/shippingitems/labels.html.  The U.S. Postal Service also offers online services through eBay.com.  This relationship helps consumers "[e]liminate trips to the Post Office by printing USPS shipping labels with postage from your desktop.".

[6]https://www.usps.com/ship/online-shipping.htm.

[7]The U.S. Postal Service's Domestic Mail Manual (DMM) lists four providers authorized to license postage meters:  Data-Pac Mailing Systems Corp., FP Mailing Solutions, Neopost Inc., and Pitney Bowes Inc.  <u>See</u> DMM sec.

(continued...)

evidence of paid postage directly on an item or on a separate label that can be affixed to an item.[8] The postage meter prints postage indicating the date on which the mark or label was printed. Postage meter marks or labels often contain information such as the authorized company; class of mail; fees paid; originating city, State, and ZIP Code; and permit number.[9] The mark created by a private postage meter has long been recognized by this Court as a postmark created by someone other than the U.S. Postal Service. See Stotter v. Commissioner, 69 T.C. 896, 897 (1978) ("Under * * * [section 301.7502-1(c)(1)(iii)(B), Proced. & Admin. Regs.], privately metered mail qualifies for the timely mailing rule of section."); see also Herrera v. Commissioner, T.C. Memo. 2012-308, at *19.

604.4.1.3 (available at http://about.usps.com/manuals/welcome.htm); see also https://www.usps.com/business/postage-options.htm.

[8]Pitney Bowes Inc. leases postage machines allowing consumers to print labels to affix to packages and print postage directly on envelopes. See https://www.pitneybowes.com/us/shipping-and-mailing/postage-meters/sendpro-c-200.html (Pitney Bowes Inc. allows consumers to "[p]rocess daily mail and print postage quickly and accurately" and "[w]eigh packages and print shipping labels right from [the consumer's] system."); see also DMM sec. 604.4.1.2(a) ("Meters may only be leased or rented and may not be sold or resold.").

[9]See DMM 82 Fed. Reg. 28559 (Jan. 22, 2017) (setting forth requirements for permit design, also known as indicia, under sec. 604.5.3, Indicia Design, Pagement, and Content); see also https://www.usps.com/business/postage-options.htm (depicting "Picture Permit Indicia", meter printing, and permit imprints showing printed and metered imprints, know as indicia, on different types of postage).

E.     Authorized PC Providers Licensed by the U.S. Postal Service

The U.S. Postal Service authorizes "PC providers" who are permitted to sell postage online that customers can purchase using their personal computers.  See 39 U.S.C. sec. 404(a)(2), (4) (2006); see also 39 C.F.R. sec. 501.2 (2015); DMM sec. 604.4.1.4.[10]  Stamps.com is a U.S. Postal Service authorized PC provider.  See DMM sec. 604.4.1.4.  PC providers allow customers to print postage from a computer or mobile device without having to lease a physical postage meter.[11]  Once the PC provider receives payment, the customer prints a label that indicates the date on which the customer paid for the postage.

---

[10]The U.S. Postal Service's Domestic Mail Manual lists three PC providers who are authorized to sell postage online:  Endicia.com, Pitney Bowes Inc., and Stamps.com.  See DMM sec. 604.4.1.4; see also http://www.stamps.com/ (Stamps.com indicates it is an "Approved Licensed Vendor" of the U.S. Postal Service); http://www.endicia.com/why-usps (Endicia.com uses "[t]he U.S. Postal Service [as] an essential part of the shipping mix for today's e-commerce businesses").

[11]See http://endicia.com/ ("Endicia's intuitive electronic postage technologies and services allow you to print U.S. Postal Service shipping labels and stamps right from your desk using a Mac or PC.").

III.   <u>Printed Postage Indicates the Date of Purchase</u>

None of these methods of affixing postage is inherently more reliable than another.  Labels generated by the U.S. Postal Service and by someone other than the U.S. Postal Service are often printed and dated separately from the act of mailing.  Dates printed by the U.S. Postal Service, postage meters, and PC providers do not guarantee the date on which the item is deposited with the U.S. Postal Service.  Often, the date is a simple indication of the day a customer purchased postage.

IV.   <u>Regulatory Backstop</u>

The risk that someone might print a label on one day and mail the item on another was contemplated by the Secretary when promulgating enabling regulations under section 7502(b).  <u>See</u> sec. 301.7502-1(c),  Proced. & Admin. Regs.  In general terms, the regulations look at how long it takes to receive an item postmarked by someone other than the U.S. Postal Service in contrast to an item deposited with and postmarked by the U.S. Postal Service.  <u>See id.</u> subpara. (1)(iii)(B)(<u>1</u>).  An item postmarked by someone other than the U.S. Postal Service is filed on the postmark date only if it is received within the same amount of time the item "would ordinarily be received [in] if it were postmarked at the same point of origin by the U.S. Postal Service".  <u>Id.</u> subdiv. (iii)(B)(<u>1</u>)(<u>ii</u>).  If it is received

later than that, the postmark is disregarded unless the following can be established: (i) the item was actually deposited before the last day for filing the document, (ii) the delay was due to delayed transmission in the U.S. mail, and (iii) the cause of the delay. Id. subdiv. (iii)(B)(2).

## Conclusion

Section 7502(b) allows for "postmarks not made by the United States Postal Service". That phrase is not limited to postage meters. Congress removed from that provision a reference to "stamp machines" more than half a century ago. The Stamps.com postmark at issue in this case is a postmark not made by the United States Postal Service, and there is no statutory basis for adhering to a decades-old notion of what constitutes a postmark.

MARVEL, FOLEY, VASQUEZ, GOEKE, HOLMES, PARIS, LAUBER, NEGA, PUGH and ASHFORD, JJ., agree with this concurring opinion.

GUSTAFSON and MORRISON, JJ., dissenting:  The Internal Revenue Code uses a "postmark" as a means for verifying the timeliness of a tax-related document required to be submitted by a deadline.  See sec. 7502.  A "postmark" is "an official postal marking on a piece of mail; specif: a mark showing the name of the post office and the date and sometimes the hour of mailing and often serving as the actual and only cancellation".  Webster's Third New International Dictionary 1773 (1981).[1]  Today, however, the Tax Court holds--or rather, somewhat less boldly, "accept[s] as the premise of * * * [its] analysis", see op. Ct. p.17--that a postage label printed by an individual customer on his own printer through the means of an internet vendor (Stamps.com) and placed by himself on his own piece of mail constitutes a "postmark not made by the United States Postal Service".  We think this conclusion is unwarranted.

The Court's reasoning, see op. Ct. p.16, seems to boil down to this:  When it first enacted section 7502 in 1954, Congress seems to have intended that a stamp made by a postage meter be deemed "a postmark not made by the United States Postal Service" (then the "United States Post Office"), sec. 7502(b); and the

---

[1]See also to the same effect, The Oxford English Dictionary 2253 (1933 ed., 1971 reprint) ("A mark officially impressed upon letters for various purposes; * * * usually a mark giving the place, date, and hour of dispatch, or of the arrival of the mail").

implementing regulations have been construed to apply to postage meters, see Herrera v. Commissioner, T.C. Memo. 2012-308, *19. The Court now observes that "a Stamps.com postage label is the modern equivalent of the output of an old-fashioned[2] postage meter", see op. Ct. p.17 (citing Tilden v. Commissioner, 846 F.3d 882 (7th Cir. 2017),[3] rev'g and remanding T.C. Memo. 2015-188), so that a Stamps.com label is likewise deemed a postmark.

Much is missing from this analysis. Section 7502(b), entitled "Stamp Machine" when first enacted in 1954, did not then and does not now expressly address postage meters. The Court now alludes to "congressional concern" and the "legislative history" of that provision, see op. Ct. p.16, but the majority opinion does not quote or even cite any of that history to explain why a postage meter was thought reliable to any extent (and therefore how anything could now

_____

[2]We think that a truly "old-fashioned" postage meter is the kind that prints directly onto an envelope that is fed through the machine (thus more resembling the post office's postmark stamped onto the envelope), whereas modern postage meters print off a label that is then affixed to the envelope. Nothing in the record supports our impression, nor gives any information about the nature of postage meters when section 7502 was enacted nor their evolution thereafter.

[3]In Tilden the Court of Appeals for the Seventh Circuit did not, like the majority here, see op. Ct. p.17, state that Stamps.com is the "modern equivalent" of a postage meter, but rather stated that Stamps.com provides "a service that supplies print-at-home postage so that everyone can enjoy the convenience of a traditional postage meter." Tilden v. Commissioner, 846 F.3d 882, 885 (7th Cir. 2017) (emphasis added), rev'g and remanding T.C. Memo. 2015-188.

be its "equivalent").[4] The statute does make explicit that "a postmark not made by the United States Postal Service" will be treated as a postmark--but "only if and to the extent provided by regulations prescribed by the Secretary." Sec. 7502(b). Neither the original regulations, first promulgated in T.D. 6232, 1957-1 C.B. 469, 472-473, nor the current regulations, 26 C.F.R. section 301.7502-1(c)(1)(iii)(B), Proced. & Admin. Regs., expressly mention postage meters, and they certainly do not mention Stamps.com labels. The majority attempts to jump this gap by invoking Auer v. Robbins, 519 U.S. 452, 461 (1997) (Scalia, J.), see op. Ct. p.15, which stands for the proposition that the Secretary's construction of his own regulations is entitled to deference.[5] The majority suggests that in this case the

---

[4]The opinion of the Court cites Fishman v. Commissioner, 51 T.C. 869, 872-873 (1969), aff'd, 420 F.2d 491 (2d Cir. 1970), as "citing House and Senate reports accompanying the 1954 Code", see op. Ct. p.16, which indeed Fishman does. In Fishman, 51 T.C. at 572-573, the Court observed that "Congress was aware that postmarks made by private postage meters could bear any date desired by the sender. For this reason, it refused to apply the same rules to both metered and unmetered mail. H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. A435 (1954); S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 615 (1954)." That is, Fishman shows congressional concern about the problems of respecting postage meter dates (and how Congress addressed such concerns); Fishman did not explain, nor does the legislative history explain, what it is about postage meter dates that inclined Congress to respect them at all.

[5]But see United Student Aid Funds, Inc. v. Bible, ___ U.S. ___, ___, 136 S. Ct. 1607, 1608 (2016) (Thomas, J., dissenting from the denial of certiorari) ("Any

(continued...)

Secretary has construed "postmark * * * made other than by the U.S. Postal Service" in section 301.7502-1(c)(1)(iii)(B)(1) to include a Stamps.com label. But the suggestion is artfully made: "In conceding that petitioners' petition was timely mailed under the regulations discussed above, <u>respondent necessarily agrees</u> that this is a case in which 'the postmark on the envelope is made other than by the U.S. Postal Service.'" <u>See</u> op. Ct. p.15 (emphasis added). We do not find in the Commissioner's briefs a statement giving this construction of the regulation. It appears the majority would grant <u>Auer</u> deference to an implication in or a logical inference from the Commissioner's brief, but we do not believe the <u>Auer</u> doctrine goes so far.

Thus, neither the regulations, nor <u>Herrera</u>, nor <u>Tilden</u>, nor the Court's opinion today explains <u>why</u> the output of a postage meter is the equivalent of a Webster's postmark, and none of them explains in what sense Stamps.com might

---

[5](...continued) reader of this Court's opinions should think that the doctrine is on its last gasp. Members of this Court have repeatedly called for its reconsideration in an appropriate case. * * * And rightly so"); <u>Perez v. Mortg. Bankers Ass'n</u>, 575 U.S. ___, ___, 135 S. Ct. 1199, 1210-1211 (2015) (Alito, J., concurring in part and concurring in the judgment); <u>id.</u> at 1213-1225 (Thomas, J., concurring in the judgment); <u>Decker v. Nw. Envtl. Def. Ctr.</u>, 568 U.S. 597, 615 (2013) (Roberts, C.J., concurring); <u>id.</u> at 616 (Scalia, J., concurring in part and dissenting in part); <u>Talk America, Inc. v. Mich. Bell Tel. Co.</u>, 564 U.S. 50, 67-69 (2011) (Scalia, J. concurring) ("[W]hile I have in the past uncritically accepted that rule, I have become increasingly doubtful of its validity").

be the equivalent of a postage meter. Presumably Stamps.com is "the modern equivalent" of a postage meter in the sense of its "convenience" to the postal customer, see Tilden v. Commissioner, 846 F.3d at 885, but our focus must instead be on the question whether the Stamps.com label is equivalent to a postmark in the sense of verifying the timeliness of a submission. On that subject the Court's opinion is silent.

If we look beyond the regulations that the Secretary has prescribed, beyond the arguments of the parties, and outside the record of this case, a more discriminating analysis might be possible. A long line of cases has held that a marking produced by a private postage meter should be considered a postmark. Gutierrez v. Indus. Claims Appeals Office, 841 P.2d 407, 409 (Colo. App. 1992); Frandrup v. Pine Board Warehouse, 531 N.W.2d 886, 889 (Minn. Ct. App. 1995); Bowman v. Administrator, 507 N.E.2d 342, 344 (Ohio 1987); Haynes v. Hechler, 392 S.E.2d 697, 700 (W. Va. 1990); Chevron U.S.A., Inc. v. Dep't of Revenue, 154 P.3d 331, 337 (Wyo. 2007). These courts have reasoned that the sender who uses a private postage meter is under an obligation to mail the item on the same day that is marked by the postage meter on the envelope. Gutierrez, 841 P.2d at 409; Frandrup, 531 N.W.2d at 889; Bowman, 507 N.E.2d at 344; Haynes, 392 S.E.2d at 699; Chevron U.S.A., Inc., 154 P.3d at 337. Congruent with that line of

cases is our Opinion in <u>Leventis v. Commissioner</u>, 49 T.C. 353 (1968), in which

the issue was whether a document was received later than the date when a

document would "ordinarily" have been received. We recognized "the date on the

postage meter stamp as the postmark date". <u>Id.</u> at 356. We did not explicitly state

our reasoning for that conclusion, but we did explain that the U.S. Postal Service's

Domestic Mail Manual required that--

> metered mail will not be postmarked by the Post Office canceling
> device except when the wrong date appears in the meter stamp, if the
> wrong date does appear on the meter stamp, the envelope will be
> postmarked through the Post Office canceling machine to show the
> correct date; and that the metered mail will be examined while being
> routed for distribution to determine that it is properly prepared, which
> examination may be made by a selected check of the pieces as they
> are distributed.

<u>Id.</u> at 354. If this procedure described in <u>Leventis</u> is still in use by the USPS[6]--an

issue about which the opinion of the Court in this case is silent--then that would

seem to be a possible reason to treat the meter date as having some reliable

relation to the mailing date and therefore as giving some verification of the

timeliness of the submission.

---

[6]It appears that the relevant portion of the Domestic Mail Manual is section
604, "Postage Payment Methods and Refunds". This is available on the internet at
https://pe.usps.com/text/dmm300/604.htm.

If such procedures are the reason that a postage meter date can reasonably be treated like a postmark, then the next question is whether Stamps.com involves equivalent procedures and assurances. On that question the record in this case is also silent. In deciding cases we operate under constraints (the rules of evidence and, in particular, Rule 201 ("Judicial Notice") of the Federal Rules of Evidence) that would prevent us from finding facts on the basis of our own internet research, which discloses that the Stamps.com website has the following question and answer:[7]

---

[7]Accessible at https://stamps.custhelp.com/app/answers/detail/a_id/303/~/-am-i-required-to-send-my-package-on-the-date-that-is-printed-on-my-shipping. It appears from stamps.com/conditions/ that a Stamps.com customer enters into an online agreement, by which he agrees (in para. 12) that Stamps.com labels "with a designated mailing date, expire after that date (USPS transactions expire pursuant to the Code of Federal Regulations). USPS misprinted or unused labels must be destroyed or returned to the USPS, as provided in the Domestic Mail Manual (see Section 11)", and agrees (in para. 14) that

> [b]y and as a result of accepting these Terms, you are also entering into an Agreement with the United States Postal Service (USPS) in accordance with the Domestic Mail Manual (DMM) 604.4, Postage Payment Methods, Postage Meters and PC Postage Products (Postage Evidencing Systems or PES). You accept responsibility for control and use of your account and the PES printed therefrom. You agree and certify that: (i) you will comply with all laws and regulations applicable to USPS services, including, without limitation, the provisions of the Domestic Mail Manual and the International Mail Manual * * *

(continued...)

Am I required to send my package on the date that is printed on my shipping label?

As required by the USPS, shipping labels must be mailed on the date that is specified on the label. * * *

It appears to us that, if a date printed on a postage meter label or on a Stamps.com label could count as a postmark, it would have to be because the sender is obliged to mail the item on the date appearing on the label--an obligation as to which the opinion of the Court is silent. Otherwise, the date simply gives information about when the postage was purchased, not when the item was mailed. A mere receipt for the purchase of postage is not a "postmark".

----

[7](...continued)
On the record of this case, we do not know whether petitioners entered into any such agreement, and we do not know whether such an agreement would be enforceable. Cf. Specht v. Netscape Commc'ns Corp., 306 F.3d 17 (2d Cir. 2002).